IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT IN AND FOR
COLLIER COUNTY, FLORIDA                                    CIVIL ACTION

S. Y. and C. S.

Plaintiffs,

                                                    **CIVIL DIVISION**
                                                    **CASE NO.: 11-2019-CA-004318-**
                                                    **0001-XX**

         v.

NAPLES HOTEL COMPANY, a Florida
Corporation d/b/a GULFCOAST INN NAPLES,
THE GULFCOAST INN OF NAPLES OWNERS
ASSOCIATION, INC., GREGORY HINES,
Individually, KEITH LEWIS, individually
and JOHN DOE, as agent of NAPLES HOTEL
COMPANY d/b/a GULFCOAST INN NAPLES
and/or THE GULFCOAST INN OF NAPLES
OWNERS ASSOCIATION, INC., BEST WESTERN
INTERNATIONAL, INC. d/b/a BEST WESTERN
NAPLES PLAZA HOTEL, BEST WESTERN
INTERNATIONAL, INC. d/b/a BEST WESTERN
NAPLES INN & SUITES,  CHOICE HOTELS
INTERNATIONAL, INC. d/b/a QUALITY INN
& SUITES GOLF RESORT, CHOICE HOTELS
INTERNATIONAL, INC. d/b/a COMFORT INN &
EXECUTIVE SUITES, HILTON WORLDWIDE, INC.,
d/b/a HAMPTON INN, PARK HOTELS & RESORTS
INC. d/b/a HAMPTON INN, HILTON WORLDWIDE
HOLDINGS INC. d/b/a HAMPTON INN,
HILTON DOMESTIC OPERATING COMPANY
INC. d/b/a HAMPTON INN, INTERCONTINENTAL
HOTELS GROUP RESOURCES, LLC d/b/a
HOLIDAY INN EXPRESS, INTER-CONTINENTAL
HOTELS CORPORATION d/b/a HOLIDAY INN
EXPRESS, INTERCONTINENTAL HOTELS GROUP
RESOURCES, LLC d/b/a STAYBRIDGE SUITES,
INTER-CONTINENTAL HOTELS CORPORATION
d/b/a STAYBRIDGE SUITES, MARRIOTT
INTERNATIONAL, INC. d/b/a RESIDENCE INN BY
MARRIOTT, MARRIOTT HOTEL SERVICES, INC.
d/b/a RESIDENCE INN BY MARRIOTT, MARS
MERGER SUB, LLC d/b/a RESIDENCE INN BY
MARRIOTT, STARWOOD HOTELS & RESORTS
WORLDWIDE, INC. d/b/a RESIDENCE INN BY

MARRIOTT, STARWOOD HOTELS & RESORTS
WORLDWIDE, LLC d/b/a RESIDENCE INN BY
MARRIOTT,  MARRIOTT INTERNATIONAL, INC.
d/b/a FAIRFIELD INN & SUITES BY MARRIOTT,
MARRIOTT HOTEL SERVICES, INC.  d/b/a
FAIRFIELD INN & SUITES BY MARRIOTT,
MARS MERGER SUB, LLC d/b/a FAIRFIELD INN &
SUITES BY MARRIOTT, STARWOOD HOTELS &
RESORTS WORLDWIDE, INC. d/b/a FAIRFIELD
INN & SUITES BY MARRIOTT, STARWOOD
HOTELS& RESORTS WORLDWIDE, LLC d/b/a
FAIRFIELD INN & SUITES BY MARRIOTT, WYNDHAM
FRANCHISOR, LLC d/b/a LA QUINTA INN, WYNDHAM
HOTELS & RESORTS, INC. d/b/a LA QUINTA INN,
WYNDHAM FRANCHISOR, LLC d/b/a DAYS INN
& SUITES, WYNDHAM HOTELS & RESORTS, INC.
d/b/a DAYS INN & SUITES, WYNDHAM FRANCHISOR,
LLC d/b/a SUPER 8 BY WYNDHAM, WYNDHAM
HOTELS& RESORTS, INC. d/b/a SUPER 8 BY
WYNDHAM, WYNDHAM FRANCHISOR, LLC
d/b/a RAMADA BY WYNDHAM NAPLES,
WYNDHAM HOTELS & RESORTS, INC. d/b/a
RAMADA BY WYNDHAM NAPLES, NAPLES GARDEN
INN, LLC, d/b/a NAPLES GARDEN INN, NAPLES
PARK CENTRAL HOTEL, LLC d/b/a NAPLES PARK
CENTRAL HOTEL, UOMI & KUDAI, LLC, d/b/a
SPINNAKER INN, SHIVPARVTI, LLC, d/b/a
SUNRISE MOTEL, MASTER CLEANERS PRO
SERVICES INC, d/b/a SUNRISE MOTEL, HOLISTIC
HEALTH HEALING, INC., d/b/a CONTY'S MOTEL,
RADHEY INC., d/b/a TAMIAMI MOTEL, JAY
VARAHIMATA INVESTMENTS, LLC, d/b/a
GLADES MOTEL, INN OF NAPLES, LLC,
d/b/a INN OF NAPLES;

     Defendants.

_____/

## FIRST AMENDED COMPLAINT

Plaintiff C. S., by and through her undersigned attorneys, hereby files this Complaint

against Defendants, NAPLES HOTEL COMPANY, a Florida Corporation d/b/a as the

GULFCOAST INN NAPLES ("Gulfcoast Inn"), THE GULFCOAST INN OF NAPLES

OWNERS ASSOCIATIONS, INC ("Owners Assoc"), CHOICE HOTELS INTERNATIONAL, INC., d/b/a QUALITY INN, (Choice Hotels), WYNDHAM FRANCHISOR, LLC d/b/a LA QUINTA INN, WYNDHAM HOTELS & RESORTS, INC. d/b/a LA QUINTA INN ("Wyndham Hotels"), INN OF NAPLES, LLC, a Florida Limited Liability Corporation d/b/a INN OF NAPLES ("Inn of Naples").

Plaintiff S. Y., by and through her undersigned attorneys, hereby files this Complaint against NAPLES HOTEL COMPANY, a Florida Corporation d/b/a GULFCOAST INN NAPLES, THE GULFCOAST INN OF NAPLES OWNERS ASSOCIATION, INC., , THE GULFCOAST INN OF NAPLES OWNERS ASSOCIATION, INC., BEST WESTERN INTERNATIONAL, INC. d/b/a BEST WESTERN NAPLES PLAZA HOTEL, BEST WESTERN INTERNATIONAL, INC. d/b/a BEST WESTERN NAPLES INN & SUITES, CHOICE HOTELS INTERNATIONAL, INC. d/b/a QUALITY INN & SUITES GOLF RESORT, CHOICE HOTELS INTERNATIONAL, INC. d/b/a COMFORT INN & EXECUTIVE SUITES, HILTON WORLDWIDE, INC., d/b/a HAMPTON INN, PARK HOTELS & RESORTS INC., d/b/a HAMPTON INN, HILTON WORLDWIDE HOLDINGS INC., d/b/a HAMPTON INN, HILTON DOMESTIC OPERATING COMPANY INC., d/b/a HAMPTON INN, INTERCONTINENTAL HOTELS GROUP RESOURCES, LLC d/b/a HOLIDAY INN EXPRESS, INTER-CONTINENTAL HOTELS CORPORATION d/b/a HOLIDAY INN EXPRESS, INTERCONTINENTAL HOTELS GROUP RESOURCES, LLC d/b/a STAYBRIDGE SUITES, INTER-CONTINENTAL HOTELS CORPORATION d/b/a STAYBRIDGE SUITES, MARRIOTT INTERNATIONAL, INC. d/b/a RESIDENCE INN BY MARRIOTT, MARRIOTT HOTEL SERVICES, INC. d/b/a RESIDENCE INN BY MARRIOTT, MARS MERGER SUB, LLC d/b/a RESIDENCE INN BY MARRIOTT, STARWOOD HOTELS & RESORTS WORLDWIDE, INC. d/b/a RESIDENCE INN BY

MARRIOTT, STARWOOD HOTELS & RESORTS WORLDWIDE, LLC d/b/a RESIDENCE INN BY MARRIOTT, MARRIOTT INTERNATIONAL, INC. d/b/a FAIRFIELD INN & SUITES BY MARRIOTT,   MARRIOTT HOTEL SERVICES, INC.  d/b/a FAIRFIELD INN & SUITES BY MARRIOTT, MARS MERGER SUB, LLC d/b/a FAIRFIELD INN & SUITES BY MARRIOTT, STARWOOD HOTELS & RESORTS WORLDWIDE, INC. d/b/a FAIRFIELD INN & SUITES BY MARRIOTT, STARWOOD HOTELS & RESORTS WORLDWIDE, LLC d/b/a FAIRFIELD INN & SUITES BY MARRIOTT, WYNDHAM FRANCHISOR, LLC d/b/a LA QUINTA INN, WYNDHAM HOTELS & RESORTS, INC. d/b/a LA QUINTA INN, WYNDHAM FRANCHISOR, LLC d/b/a DAYS INN & SUITES, WYNDHAM HOTELS & RESORTS, INC. d/b/a DAYS INN & SUITES, WYNDHAM FRANCHISOR, LLC d/b/a SUPER 8 BY WYNDHAM, WYNDHAM HOTELS & RESORTS, INC. d/b/a SUPER 8 BY WYNDHAM, WYNDHAM FRANCHISOR, LLC d/b/a RAMADA BY WYNDHAM NAPLES, WYNDHAM HOTELS & RESORTS, INC. d/b/a RAMADA BY WYNDHAM NAPLES, NAPLES GARDEN INN, LLC, d/b/a NAPLES GARDEN INN NAPLES PARK CENTRAL HOTEL, LLC d/b/a NAPLES PARK CENTRAL HOTEL, UOMI & KUDAI, LLC, a Florida Limited Liability Corporation d/b/a SPINNAKER INN, SHIVPARVTI, LLC, a Florida Limited Liability Corporation d/b/a SUNRISE MOTEL, MASTER CLEANERS PRO SERVICES INC, a Florida Corporation d/b/a SUNRISE MOTEL, HOLISTIC HEALTH HEALING, INC., a Florida Corporation d/b/a CONTY'S MOTEL,  RADHEY INC., a Florida Corporation d/b/a TAMIAMI MOTEL, JAY VARAHIMATA INVESTMENTS, LLC, a Florida Limited Liability Corporation d/b/a GLADES MOTEL, INN OF NAPLES, LLC, a Florida Limited Liability Corporation d/b/a INN OF NAPLES.

Plaintiffs allege against their respective Defendants as follows:

## Preliminary Statement

1.     Human sex trafficking is a form of modern-day slavery that illegally exists throughout the United States and globally and is furthered by public lodging establishments.

2.     For years, sex trafficking ventures have brazenly operated in and out of hotels throughout this country.  Criminals parade their misconduct openly on hotel properties throughout the United States while the hotels and hospitality industry remain willfully blind to the criminal misconduct to continue earning a profit at the expense of human life, human rights, and human dignity.

3.     Human trafficking is the world's fastest growing crime.  While the term 'human trafficking' incorporates all forced labor, the sex trafficking industry alone pulls in an estimated $99 billion each year making it the second largest illicit crime industry behind only the sale of all illegal drugs. Sex traffickers, or 'pimps', use threats, violence, manipulation, lies, debt bondage, and other forms of coercion to compel adults and children to engage in commercial sex acts against their will.

4.     This action for damages is brought by the Plaintiffs, survivors of sex trafficking, hereinafter identified by their initials S. Y. and C. S. respectively, under the federal William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (hereinafter "TVPRA").

5.     This is an action against, *inter alia*, hotel owners, operators and/or franchisees who knew or should have known  that sex trafficking and other criminal activity was occurring, and would continue to occur, on their hotel premises as a result of their misfeasance and nonfeasance.

6.     At all material times, the Defendants individually and/or by their actual or apparent agents, servants, franchisees and/or employees aided, concealed, confined, benefitted and profited from sex trafficking and other criminal activity that was occurring on their hotel premises.

7.     At all material times, the Defendants individually and/or by their actual or apparent agents, servants, franchisees and/or employees harbored human traffickers on their premises and/or failed

to rectify the foreseeable risks of sex trafficking and other criminal activity that was occurring and would continue to occur on their hotel premises.

8.      At all material times, the Defendants individually and/or by their actual or apparent agents, servants, franchisees and/or employees failed to take steps to prevent dangerous conditions from existing on their hotel premises, failed to ensure the premises were safe and secure from criminal conduct and failed to report suspicious conduct, such as human sex trafficking at their hotels.

9.      As a result of the Defendants' failure to act and their negligent operations, the Defendants allowed their premises to be a vehicle for carrying out human trafficking, sex crimes and other unlawful conduct. While the Defendants profited from the room occupancy, the Plaintiffs were being exposed to continuous and repeated dangerous conditions as a sex slave that resulted in the Plaintiffs' confinement, bodily injuries, property damage, emotional distress, mental harm and anguish from approximately 2015 and continued through to approximately January of 2016.

10.     The Plaintiffs bring this action for damages against their respective Defendants listed herein. Each of the Defendants, in violation of 18 U.S.C. § 1595, knowingly benefited from facilitating a venture that they knew, or should have known, to be engaging in sex trafficking in violation of 18 U.S.C. § 1591(a) and (b).

11.     As a direct and proximate result of the Defendants' consistent refusals to prevent human trafficking on their hotel properties, the Plaintiffs were sex trafficked, sexually exploited, and victimized repeatedly at the Defendants' hotels.

12.     The Plaintiffs bring this action pursuant to the Trafficking Victims Protection Reauthorization Act 18 U.S.C. §1595, against the Defendants who enabled, facilitated, and financially benefited from a sex trafficking venture in which Plaintiffs S. Y. and C. S. were trafficked for the purpose of commercial sex, sexually exploited and brutally victimized in

violation of 18 U.S.C. §1591 (a) and (b).

13.     This action is also for premises liability; false imprisonment; assault, battery and kidnapping; negligent infliction of emotional distress; invasion of privacy; breach of contract; unjust enrichment; unconscionable practices; negligence; and aiding and abetting a criminal enterprise and related offenses.

### Parties, Jurisdiction, Venue

14.     This is an action for damages in excess of $15,000.00, exclusive of interest and cost.

15.     At all times material to this complaint, Plaintiff C. S. was a resident of Collier County, Florida and is otherwise *sui juris*

16.     At all times material to this complaint, Plaintiff S. Y. was a resident of Collier County, Florida and is otherwise *sui juris*.

17.     Defendant Best Western International, Inc. is an Arizona corporation headquartered in Phoenix, Arizona.

18.     At all times material to this complaint, Best Western International, Inc. ("Best Western Hotels") was doing business as Best Western Naples Plaza Hotel in Naples, Florida, and upon information and belief is authorized to do, licensed to do, and doing business in the State of Florida as a place of public lodging, and was, at all times, by and through its agents, servants, franchisees and/or employees, the owner, operator, manager, supervisor, controller and innkeeper of the hotel, namely the Best Western Naples Plaza Hotel at 6400 Naples, FL 34105.

19.     At all times material to this complaint, Best Western International, Inc. ("Best Western Hotels") was doing business as Best Western Naples Inn & Suites in Naples, Florida, and upon information and belief is authorized to do, licensed to do, and doing business in the State of Florida as a place of public lodging, and was, at all times, by and through its agents, servants, franchisees

and/or employees, the owner, operator, manager, supervisor, controller and innkeeper of the hotel, namely the Best Western Naples Inn & Suites at 2329 9th St N., Naples, FL 34116.

20.     Defendant Choice Hotels International, Inc. is one of the largest hotel brands in the world. It is a Delaware corporation with its principal place of business located at 1 Choice Hotels Circle, Suite 400, Rockville, Maryland 20850.

21.     At all times material to this complaint, Choice Hotels International, Inc. ("Choice Hotels") was doing business as Quality Inn in Naples, Florida, and upon information and belief is authorized to do, licensed to do, and doing business in the State of Florida as a place of public lodging, and was, at all times, by and through its agents, servants, franchisees and/or employees, the owner, operator, manager, supervisor, controller and innkeeper of the hotel, namely the Quality Inn Suites Golf Resort at 4100 Golden Gate Pkwy, Naples, FL 34116.

22.     At all times material to this complaint, Choice Hotels International, Inc. ("Choice Hotels) was doing business as Comfort Inn & Executive Suites in Naples, Florida, and upon information and belief is authorized to do, licensed to do, and doing business in the State of Florida as a place of public lodging, and was, at all times, by and through its agents, servants, franchisees and/or employees, the owner, operator, manager, supervisor, controller and innkeeper of the hotel, namely the Comfort Inn & Executive Suites at 3860 Tollgate Blvd, Naples, FL 34114.

23.     At all times material to this complaint, Hilton Worldwide, Inc., Park Hotels & Resorts Inc., Hilton Worldwide Holdings Inc., and Hilton Domestic Operating Company Inc. ("Hilton Hotels") were doing business as Hampton Inn in Naples, Florida, and upon information and belief are authorized to do, licensed to do, and doing business in the State of Florida as a place of public lodging, and were, at all times, by and through their agents, servants, franchisees and/or employees, the owner, operator, manager, supervisor, controller and innkeeper of the hotel, namely

8

the Hampton Inn hotels located at 3210 Tamiami Trail N, Naples, FL 34103 and 2630 Northbrooke Plaza Dr, Naples, FL 34119.

24.     At all times material to this complaint, Intercontinental Hotels Group Resources, LLC and Inter-Continental Hotels Corporation ("IHG Hotels") were doing business as Holiday Inn in Naples, Florida, and upon information and belief are authorized to do, licensed to do, and doing business in the State of Florida as a place of public lodging, and were, at all times, by and through their agents, servants, franchisees and/or employees, the owner, operator, manager, supervisor, controller and innkeeper of the hotel, namely the Holiday Inn Express at 1837 Tollgate Boulevard, Naples, FL 34104.

25.     At all times material to this complaint, Intercontinental Hotels Group Resources, LLC and Inter-Continental Hotels Corporation ("IHG Hotels") were doing business as Staybridge Suites in Naples, Florida, and upon information and belief are authorized to do, licensed to do, and doing business in the State of Florida as a place of public lodging, and were, at all times, by and through their agents, servants, franchisees and/or employees, the owner, operator, manager, supervisor, controller and innkeeper of the hotel, namely the Staybridge Suites Naples-Gulf Coast at 4805 Tamiami Trail N, Naples, FL 34103.

26.     At all times material to this complaint, Marriott International, Inc., Marriott Hotel Services, Inc., Mars Merger Sub, LLC, Starwood Hotels & Resorts Worldwide, Inc, and Starwood Hotels & Resorts Worldwide, LLC ("Marriott Hotels") were doing business as Residence Inn by Marriott in Naples, Florida, and upon information and belief are authorized to do, licensed to do, and doing business in the State of Florida as a place of public lodging, and were, at all times, by and through their agents, servants, franchisees and/or employees, the owner, operator, manager, supervisor, controller and innkeeper of the hotel, namely the Residence Inn by Marriott Naples at

4075 Tamiami Trail N, Naples, FL 34103.

27.     At all times material to this complaint, Marriott International, Inc., Marriott   Hotel

Services, Inc., Mars Merger Sub, LLC, Starwood Hotels & Resorts Worldwide, Inc, and Starwood

Hotels & Resorts Worldwide, LLC ("Marriott Hotels") were doing business as Fairfield Inn by

Marriott in Naples, Florida, and upon information and belief are authorized to do, licensed to do,

and doing business in the State of Florida as a place of public lodging, and were, at all times, by

and through their agents, servants, franchisees and/or employees, the owner, operator, manager,

supervisor, controller and innkeeper of the hotel, namely the Fairfield Inn & Suites by Marriott

Naples at 3808 White Lake Blvd, Naples, FL 34117.

28.     Defendant Wyndham Franchisor, LLC is a wholly owned subsidiary of Wyndham Hotels

& Resorts, Inc., a Delaware corporation with its principal place of business located at 22 Sylvan

Way, Parsippany, New Jersey 07054.

29.     At all times material to this complaint Wyndham Franchisor, LLC and Wyndham Hotels

& Resorts, Inc. ("Wyndham Hotels") were doing business as La Quinta Inn in Naples, Florida, and

upon information and belief are authorized to do, licensed to do, and doing business in the State

of Florida as a place of public lodging, and were, at all times, by and through their agents, servants,

franchisees and/or employees, the owner, operator, manager, supervisor, controller and innkeeper

of the hotel, namely the La Quinta Inn & Suites by Wyndham Naples Downtown at 1555 5th Ave

S, Naples, FL 34102 and the La Quinta Inn & Suites by Wyndham Naples East at 185 Bedzel Cir.

Naples, FL 34104.

30.     At all times material to this complaint, Wyndham Franchisor, LLC and Wyndham Hotels

& Resorts, Inc. . ("Wyndham Hotels") were doing business as Days Inn in Naples, Florida, and

upon information and belief are authorized to do, licensed to do, and doing business in the State

of Florida as a place of public lodging, and were, at all times, by and through their agents, servants, franchisees and/or employees, the owner, operator, manager, supervisor, controller and innkeeper of the hotel, namely the Days Inn & Suites by Wyndham Bonita Springs North Naples at 27991 Oakland Dr, Bonita Springs, FL 34135.

31.     At all times material to this complaint, Wyndham Franchisor, LLC and Wyndham Hotels & Resorts, Inc. ("Wyndham Hotels") were doing business as Super 8 by Wyndham in Naples, Florida, and upon information and belief are authorized to do, licensed to do, and doing business in the State of Florida as a place of public lodging, and were, at all times, by and through their agents, servants, franchisees and/or employees, the owner, operator, manager, supervisor, controller and innkeeper of the hotel, namely the Super 8 by Wyndham Naples at 3880 Tollgate Blvd, Naples, FL 34114.

32.     At all times material to this complaint, Wyndham Franchisor, LLC and Wyndham Hotels & Resorts, Inc. . ("Wyndham Hotels") were doing business as Ramada by Wyndham Naples in Naples, Florida, and upon information and belief are authorized to do, licensed to do, and doing business in the State of Florida as a place of public lodging, and were, at all times, by and through their agents, servants, franchisees and/or employees, the owner, operator, manager, supervisor, controller and innkeeper of the hotel, namely the Ramada by Wyndham Naples at 1100 Tamiami Trail N, Naples, FL 34102.

33.     At all times material to this complaint, Gulfcoast Inn was and is doing business on behalf of a Naples Hotel Company with its principal place of business in Naples, Florida, and upon information and belief is authorized to do, licensed to do, and doing business in the State of Florida as a place of public lodging, and was, at all times, by and through its agents, servants, franchisees and/or employees, the owner, operator, manager, supervisor, controller and innkeeper of a hotel,

namely the Gulfcoast Inn Naples, located at 2555 Tamiami Trail N, Naples, FL 34103.

34.    At all times material to this complaint,  Gulfcoast Inn was and is doing business on behalf of a Naples Hotel Company with its principal place of business in Naples, Florida, and upon information and belief is authorized to do, licensed to do, and doing business in the State of Florida as a place of public lodging, and was, at all times, by and through its agents, servants, franchisees and/or employees, the owner, operator, manager, supervisor, controller and innkeeper of a hotel, namely the Gulfcoast Inn Naples, located at 2555 Tamiami Trail N, Naples, FL 34103.

35.    At all times material to this complaint,  the Inn of Naples, LLC was and is a Florida Limited Liability company, with its principal place of business in Naples, Florida, and upon information and belief is authorized to do, licensed to do, and doing business in the State of Florida as a place of public lodging, and was, at all times, by and through its agents, servants, franchisees and/or employees, the owner, operator, manager, supervisor, controller and innkeeper of a hotel, namely the Inn of Naples, located at 4055 Tamiami Trail N, Naples, FL 34103.

36.    At all times material to this complaint, Naples Garden Inn, LLC ("Naples Garden Inn") was doing business as Naples Garden Inn in Naples, Florida, and upon information and belief is authorized to do, licensed to do, and doing business in the State of Florida as a place of public lodging, and was, at all times, by and through its agents, servants, franchisees and/or employees, the owner, operator, manager, supervisor, controller and innkeeper of the hotel, namely the Naples Garden Inn at 2630 Tamiami Trail N, Naples, FL 34103.

37.    At all times material to this complaint, Naples Park Central Hotel, LLC ("Naples Park Central Hotel") was doing business as Naples Park Central Hotel in Naples, Florida, and upon information and belief is authorized to do, licensed to do, and doing business in the State of Florida as a place of public lodging, and was, at all times, by and through its agents, servants, franchisees

and/or employees, the owner, operator, manager, supervisor, controller and innkeeper of the hotel, namely the Naples Park Central Hotel at 40 9th St N, Naples, FL 34102.

38.    At all times material to this complaint,  Uomi & Kudai, LLC ("Spinnaker Inn") was and is a Florida Limited Liability company, with its principal place of business in Naples, Florida, and upon information and belief is authorized to do, licensed to do, and doing business in the State of Florida as a place of public lodging, and was, at all times, by and through its agents, servants, franchisees and/or employees, the owner, operator, manager, supervisor, controller and innkeeper of a hotel, namely the Spinnaker Inn located at 6600 Dudley Dr, Naples, FL 34105.

39.    At all times material to this complaint, Shivparvti, LLC and Master Cleaners Pro Services Inc. ("Sunrise Motel") were and are a Florida Limited Liability company and a Florida Corporation respectively, with its principal places of business in Naples, Florida, and upon information and belief they were authorized to do, licensed to do, and doing business in the State of Florida as a place of public lodging, and was, at all times, by and through their agents, servants, franchisees and/or employees, were the owner, operator, manager, supervisor, controller and innkeeper of a hotel, namely the Sunrise Motel located at 2486 Tamiami Trail E, Naples, FL 34112.

40.    At all times material to this complaint,  Holistic Health Healing, Inc. ("Conty's Motel") was and is a Florida corporation, with its principal place of business in Naples, Florida, and upon information and belief is authorized to do, licensed to do, and doing business in the State of Florida as a place of public lodging, and was, at all times, by and through its agents, servants, franchisees and/or employees, the owner, operator, manager, supervisor, controller and innkeeper of a hotel, namely Conty's Motel located at 11238 Tamiami Trail E, Naples, FL 34113.

41.    At all times material to this complaint, Radhey, Inc. ("Tamiami Motel") was and is a Florida corporation, with its principal place of business in Naples, Florida, and upon information

and belief is authorized to do, licensed to do, and doing business in the State of Florida as a place of public lodging, and was, at all times, by and through its agents, servants, franchisees and/or employees, the owner, operator, manager, supervisor, controller and innkeeper of a hotel, namely Tamiami Motel located at 2164 Tamiami Trail E, Naples, FL 34112.

42.     At all times material to this complaint, Jay Varahimata Investments, LLC ("Glades Motel") was and is a Florida Limited Liability company with its principal place of business in Naples, Florida, and upon information and belief it was authorized to do, licensed to do, and doing business in the State of Florida as a place of public lodging, and was, at all times, by and through their agents, servants, franchisees and/or employees, were the owner, operator, manager, supervisor, controller and innkeeper of a hotel, namely the Glades Motel located at 3115 Tamiami Trail E, Naples, FL 34112.At all relevant times, Defendant Owners Assoc has been a corporation licensed to do and doing business at property sometimes/commonly known as the Gulfcoast Inn of Naples, in Collier County, Florida and is otherwise *sui juris*.

43.     At all relevant times, all Defendant hotels were licensed to do and doing business in Florida and are otherwise *sui juris*.

44.     At all times material to this complaint, Defendants' premises were used by Plaintiffs' sex traffickers to further an illegal enterprise of, among other things, sex trafficking and the sale of illegal drugs.

## Sex Trafficking Under Federal Law

45.     Sex trafficking is defined by the TVPRA under 22 U.S.C. § 7102, as "the recruitment, harboring, transportation, provision, obtaining, patronizing, or soliciting of a person for the purposes of a commercial sex act and in which the commercial sex act is induced by force, fraud, or coercion or in which the person induced to perform such act has not attained 18 years of age."

14

This definition combines the three elements of sex trafficking as a criminal offense: the act, the means, and the purpose.

46.     Sex trafficking ventures are prohibited by federal criminal law. Sex trafficking is slavery for the *purpose* of commercial sex, a lens on the already existing crimes prohibited by 18 U.S.C. § 1589 and §1590. The crime of slavery can be divided into two (2) elements: the act and the means. The *act* is the "harboring, transporting, providing, or obtaining," of forced labor, codified as a violation of 18 U.S.C. §1590, while the *means* is labor "obtained or provided by force, fraud or coercion" and is codified as a violation of 18 U.S.C. §1589.

47.     Thus, while the complete definition of 'sex trafficking' is found in the TVPRA under 22 U.S.C. § 7102, and it is specifically prohibited under 18 U.S.C. §1591, it is nevertheless a long-recognized and familiar atrocity.

48.     Pursuant to 18 U.S.C. §1591(a) and (b), all who knowingly provide *or* obtain commercial sex that was provided or obtained through force, fraud, and coercion *or* from a person under the age of 18 years old are guilty of sex trafficking. This includes, at a minimum, ***both*** the 'traffickers' who recruit, harbor, transport, and provide individuals for forced commercial sex work ***and*** the 'Johns' or 'buyers' who obtain, solicit, or patronize forced commercial sex work.

### Statement of Facts

#### A. The Hospitality Industry's Participation in the Sex Trafficking Industry

49.     The hospitality industry plays a crucial role in the sex trade. The trope of the "no-tell hotel" is certainly not a new one. Hotels have long profited from their reputations as havens of privacy and discretion for the offending. Hotels offer anonymity and non-traceability, making them ideal venues for crime and sex trafficking in particular.

50.     According to National Human Trafficking Hotline statistics, hotels are the top-reported

15

venue, even over commercial front brothels, where sex trafficking acts occur.  Traffickers and buyers alike frequently use hotel rooms to exploit victims.

51.      Traffickers use hotels as the hub of their operations. Inside, the victims are harbored, raped, assaulted, and forced to service buyers who come to the hotel solely to purchase sex. This is referred to as an 'in call'.

52.      Hotels are also the venue of choice for buyers seeking an 'out call,' wherein the buyer rents a hotel room and the trafficker delivers the victim to the buyer's room to complete the sordid transaction.  Unsurprisingly, those on the demand side of this transaction (i.e. those purchasing sex) typically choose to engage in trafficking away from their home, naturally leading to the increased involvement of hotels.

53.      The problem is industry wide.  In the United States, as much as 63% of all trafficking incidents happen in hotels ranging from luxury to economy.

54.      Due to the overall complacency of the hospitality industry on addressing the issue, hotels are *the* venue of choice for sex trafficking. Traffickers and buyers capitalize on the hotel industry's general refusal to adopt and enforce companywide anti-trafficking policies from the corporate to the property level, train staff on what to look for and how to respond, and/or establish safe and secure reporting mechanisms for those at the point of sale.

55.      Every day, thousands of hotel employees witness manifestations of sex trafficking and commercial exploitation.  Thus, the hospitality industry has the greatest reach to prevent, identify and thwart sexual exploitation where it is most likely to occur.

56.      But aside from their unique position in this epidemic, hotels have one of the highest obligations to protect their guests from known dangers, including sex trafficking and sexual exploitation, and should be held accountable when they fail to comply.  As aptly stated in a

publication by the Cornell University School of Hospitality, "the hospitality industry is undoubtedly involved in the sex trafficking industry…and therefore has an inherent responsibility to deter the crime and can be liable for failing to do so."

57.    Training hotel staff to identify the signs of sex trafficking and sexual exploitation is a critical and obvious legal obligation for the hospitality industry.  The presence of sex trafficking and sexual exploitation in a hotel is frequently an obvious occurrence and, although unutilized, underutilized, or ineffectively utilized, numerous well-researched trainings and toolkits have been published to the hotel industry to help hotel staff in every position to identify the signs.

58.    From check-in to check-out there are a number of indicators that traffickers and their victims exhibit during their stay at a hotel.  With proper training and the implementation of reasonable security measures, hospitality companies could prevent regular sex trafficking under their flag.

59.    The hospitality industry has been cognizant of their role and responsibilities in the sex trafficking industry for years.

60.    End Child Prostitution and Trafficking (ECPAT-USA) launched the Tourism Child-Protection Code of Conduct (the "Code") in the United States in 2004.  The Code identifies the following six (6) steps companies can take to prevent child sex trafficking: (1) establish corporate policy and procedures against sexual exploitation of children; (2) train employees in children's rights, the prevention of sexual exploitation and how to report suspected cases; (3) include a clause in further partner contracts stating a common repudiation and zero tolerance policy of sexual exploitation of children; (4) provide information to travelers on children's rights, the prevention of sexual exploitation of children and how to report suspected cases; (5) support, collaborate and engage stakeholders in the prevention of sexual exploitation of children; and (6) report annually on the company's implementation of Code-related activities.

17

61.     In 2011, Wyndham Hotels and Resorts Inc.'s predecessor entity Wyndham Worldwide Corporation, signed the Code and that same year trained only *some* of its employees to look for signs of trafficking.

62.     In 2012, an anti-trafficking coalition alerted Defendant Choice Hotels International, Inc. of the likelihood of sex trafficking during the London Olympics, and inquired about the companies anti-trafficking policies, while urging immediate action regarding trafficking.

63.     Further, nationwide campaigns recognized the issue of human trafficking in the hotel industry and the lack of internal policies to address the issue and took initiative as early as 1997 with the United Nations Blue Heart Campaign and domestically in 2010 with the Department of Homeland Security's Blue Campaign. These efforts sought to educate both the public and private sectors on identifying and combatting human trafficking, including the hospitality industry and both campaigns released online resources and toolkits publicly accessible to any entity concerned with human trafficking.

64.     Hospitality companies have both the power and responsibility to make sex trafficking difficult for the offenders. Yet, they either repeatedly fail to heed the call or repeatedly failed to execute their own policies.  Instead, each continues to facilitate these crimes at their hotels, content to direct their efforts solely to profit and the bottom line.

### B. Defendants Control the Hospitality Industry

65.     Hotel brands or flags lend their name and likeness to third party owners, while the building and operations are run by a franchisee or third party management company under the brands' control. In return, the parent brand exchanges the high risk that is inherent in owning an asset like a hotel for the low risk associated with owning a franchise contract or membership agreement and still profits from putting heads in beds.

18

66.     However, the average consumer does not see this relationship.  The parent brand gives the franchisee property its entire identity.  It provides signage on and in front of the building that assures customers that if they check into that hotel, they can expect the standards consistent with the parent hotel brand.  The same brand emblazoned on everything in the hotel from the pens in the bedside tables to the staff uniforms at the front desk.

67.     In addition to brand recognition, a marketing organization, hotel listings in the Global Distribution System (GDS) and other online travel agency databases, the brand provides the franchise hotel with access to its brand wide central reservation system, 800 number, revenue management tools, world-class loyalty programs and a website.  This is so that booking and room reservations, the source of profits for the entire industry, are controlled by the corporate parent brand.

68.     The franchise hotel typically pays around 10% of their total revenue back to the parent hotel brand and is required by the brand to develop and maintain the property in accordance with the parent hotel brand's standards as they are laid out in the franchise agreement.

69.     Per the franchise agreement, the parent brand may enforce these standards through periodic audits, inspections, and termination of the franchise agreement if the franchise hotel is found to be inadequate.  The right of the parent hotel brand to enforce their brand standards is also their responsibility.

70.     At the time of the incidents alleged herein:

      a.   Defendant Best Western Hotels owned and controlled the Garden Inn brand and Best Western brand.

      b.   Defendant Choice Hotels owned and controlled the Quality Inn brand and the Comfort Inn brand.

c.  Defendants Hilton Hotels owned and controlled the Hampton Inn brand.

d.  Defendants IHG Hotels owned and controlled the Holiday Inn Express brand and the Staybridge Suites brand.

e.  Defendants Marriott Hotels owned and controlled the Residence Inn brand and the Fairfield Inn & Suites brand.

f.  Defendants Wyndham Hotels owned and controlled the La Quinta brand, the Super8 brand and the Days Inn brand.

g.  Defendant Naples Garden Inn, LLC owned and controlled the Naples Garden Inn brand.

h.  Defendant Naples Park Central Hotel owned and controlled the Naples Park Central Hotel brand.

i.  Defendants Spinnaker Inn owned and controlled the Spinnaker Inn brand.

j.  Defendants Sunrise Motel owned and controlled the Sunrise Motel brand.

k.  Defendant Conty's Motel owned and controlled the Conty's Motel brand.

l.  Defendant Tamiami Motel owned and controlled the Tamiami Motel brand.

m.  Defendant Glades  Motel owned and controlled the Glades Motel brand.

n.  Defendants Naples Hotel Company and The Gulfcoast Inn of Naples Owners Association, Inc., ("Gulfcoast Inn Hotel") owned and controlled the Gulfcoast Inn brand.

o.  Defendant Inn of Naples, LLC ("Inn of Naples") owned and controlled the Inn of Naples brand.

71.  While parent hotel brands may kick delinquent hotels out of their system, they seldom do because it is at the expense of terminating their royalty payments. Even an inadequate or

20

dangerous hotel under the parent hotel brand's flag generates more revenue than no hotel.

### C. Defendants' Willful Blindness to Sex Trafficking at their Hotels

72.   Defendants Best Western Hotels, Choice Hotels, Hilton Hotels, IHG Hotels, Marriott Hotels, Wyndham Hotels, Naples Garden Inn, Naples Park Central Hotel, Spinnaker Inn, Sunrise Motel, Conty's Motel, Tamiami Motel, Glades Motel, Naples Garden Inn,  Naples Hotel Company, The Gulfcoast Inn of Naples Owners Association, Inc., and Inn of Naples have all been on notice of repeated incidences of sex trafficking occurring at their, Best Western Naples Plaza Hotel, Best Western Naples Inn & Suites, Quality Inn & Suites, Comfort Inn & Executive Suites, Hampton Inn, Holiday Inn Express, Staybridge Suites, Residence Inn, Fairfield Inn & Suites, La Quinta Inn, La Quinta Inn & Suites, Days Inn & Suites, Super 8, Ramada by Wyndham Naples, Naples Garden Inn, Naples Park Central Hotel, Spinnaker Inn, Sunrise Motel, Conty's Motel, Tamiami Motel, Glades Motel, Gulfcoast Inn hotel and Inn of Naples hotels respectively, yet all these Defendants and their brand managers failed to take the necessary action to prevent sex trafficking and still persist in failing to take the necessary action to prevent sex trafficking at their hotels.

73.   BEST WESTERN INTERNATIONAL, INC. ("Best Western Hotels"):

   a.   Defendant Best Western Hotels owned, supervised, or operated the Best Western Naples Plaza Hotel located at 6400 Naples, FL 34105 and the Best Western Naples Inn & Suites located at 2329 9th St N., Naples, FL 34116. Best Western Hotels failed to implement and enforce any of its own policy or policies and protect Plaintiff S. Y. from being sex trafficked at any of its hotel properties.

   b.   Best Western Hotels knew or should have known that the Best Western Naples Plaza Hotel and the Best Western Naples Inn & Suites where Plaintiff S. Y. was trafficked were areas known for high incidence of crime and prone to sex trafficking activity

on and around the hotel premises, including when Plaintiff S. Y. was trafficked.

c. Despite having knowledge of the extensive prostitution and sex trafficking that occurs at its hotels, Defendant Best Western Hotels has repeatedly failed to stop these actions.

d. Defendant Best Western Hotels could have exercised control over the Best Western Naples Plaza Hotel and the Best Western Naples Inn & Suites hotels by:

    i. distributing information to assist employees in identifying human trafficking;

    ii. providing a process for escalating human trafficking concerns within the organization;

    iii. requiring employees to attend training related to human trafficking;

    iv. providing new hire orientation on human rights and corporate responsibility;

    v. providing training and education to its hotels through webinars, seminars, conferences, and online portals;

    vi. developing and holding ongoing training sessions on human trafficking; or providing checklists, escalation protocols and information to property management staff; or tracking performance indicators and key metrics on human trafficking prevention.

e. Defendant Best Western Hotels was in an agency relationship with Garden Inn branded hotels and all Best Western branded hotels offering public lodging services in the hotel. This agency relationship was created through Defendant Best Western Hotels' exercise of an ongoing and systemic right of control over Garden Inn

branded hotels and over Best Western branded hotels by Defendant Best Western Hotels' operations, including the means and methods of how Garden Inn branded hotels and Best Western branded hotels conducted daily business through one or more of the following actions:

    i.   hosting online bookings on Defendant Best Western Hotels' domain; requiring Garden Inn branded hotels and Best Western branded hotels to use Defendant Best Western Hotels' customer rewards program;

    ii.   setting employee wages;

    iii.   making employment decisions;

    iv.   advertising for employment;

    v.   sharing profits;

    vi.   standardized training methods for employees;

    vii.   building and maintaining the facility in a manner specified by the owner;

    viii.   standardized or strict rules of operation;

    ix.   regular inspection of the facility and operation by owner;

    x.   fixing prices; or

    xi.   other actions that deprive Garden Inn and Best Western branded hotels of independence in business operations.

f.   An apparent agency also exists between Defendant Best Western Hotels and Garden Inn branded hotels. Similarly, an apparent agency also exists between Defendant Best Western Hotels and its Best Western branded hotels. Defendant Best Western Hotels held out Garden Inn branded hotels and Best Western branded hotels to the public as possessing authority to act on its behalf.

g. Given Defendant Best Western Hotels' public statements on behalf of its hotel brands and the control it assumed in educating, implementing, and directing its branded hotels, including Garden Inn branded hotels and Best Western branded hotels, Defendant Best Western Hotels breached its duties in the following ways:

i. did not adequately distribute information to assist employees in identifying human trafficking;

ii. failed to provide a process for escalating human trafficking concerns within the organization;

iii. failed to mandate managers, employees, or owners attend training related to human trafficking;

iv. failed to provide new hire orientation on human rights and corporate responsibility;

v. failed to provide training and education on human trafficking through webinars, seminars, conferences, and online portals;

vi. failed to develop and hold or require ongoing training sessions on human trafficking; or

vii. failed to provide checklists, escalation protocols and information to property management staff or tracking performance indicators and key metrics on human trafficking prevention.

h. For years, Defendant Best Western Hotels has demonstrated willful blindness to the rampant culture of sex trafficking which tragically occurs on its Garden Inn branded hotels and its Best Western branded properties throughout the country. This same entrenched, pervasive willful blindness to sex trafficking facilitated the

sex trafficking of the Plaintiff S. Y. at the Best Western branded hotels that form the basis of this complaint.

74.    HILTON WORLDWIDE, INC., PARK HOTELS & RESORTS INC., HILTON WORLDWIDE HOLDINGS INC, AND HILTON DOMESTIC OPERATING COMPANY INC. ("Hilton Hotels"):

a.    Defendant Hilton Hotels owned, supervised, or operated the Hampton Inn located at 3210 Tamiami Trail N, Naples, FL 34103 and 2630 Northbrooke Plaza Dr, Naples, FL 3411. Hilton Hotels failed to implement and enforce any of its own policy or policies and protect Plaintiff S. Y. from being sex trafficked.

b.    Hilton Hotels knew or should have known that the Hampton Inn where Plaintiff S. Y. was trafficked was an area known for high incidence of crime and prone to sex trafficking activity on and around the hotel premises, including when Plaintiff S. Y. was trafficked.

c.    Despite having knowledge of the extensive prostitution and sex trafficking that occurs at its hotels, Defendant Hilton Hotels has repeatedly failed to stop these actions.

d.    Defendant Hilton Hotels could have exercised control over its Hampton Inn branded hotels by:

i.    distributing information to assist employees in identifying human trafficking;

ii.    providing a process for escalating human trafficking concerns within the organization;

iii.    requiring employees to attend training related to human trafficking;

25

      iv.   providing new hire orientation on human rights and corporate responsibility;

      v.   providing training and education to Hampton Inn branded hotels through webinars, seminars, conferences, and online portals;

      vi.   developing and holding ongoing training sessions on human trafficking; or

      vii.   providing checklists, escalation protocols and information to property management staff; or tracking performance indicators and key metrics on human trafficking prevention.

e.   Hilton Hotels was in an agency relationship with Hampton Inn branded hotels offering public lodging services in the hotel. This agency relationship was created through Defendant Hilton Hotels' exercise of an ongoing and systemic right of control over Hampton Inn hotels by Defendant Hilton Hotels' operations, including the means and methods of how Hampton Inn branded hotels conducted daily business through one or more of the following actions:

      i.   hosting online bookings on Defendant Hilton Hotels' domain;

      ii.   requiring Hampton Inn branded hotels to use Defendant Hilton Hotel's customer rewards program;

      iii.   setting employee wages;

      iv.   making employment decisions;

      v.   advertising for employment;

      vi.   sharing profits;

      vii.   standardized training methods for employees;

<ul style="list-style:none">
<li>viii.   building and maintaining the facility in a manner specified by the owner;</li>
<li>ix.   standardized or strict rules of operation;</li>
<li>x.   regular inspection of the facility and operation by owner;</li>
<li>xi.   fixing prices; or</li>
<li>xii.   other actions that deprive Hampton Inn branded hotels of independence in business operations.</li>
</ul>

f.   An apparent agency also exists between Defendant Hilton Hotels and Hampton Inn branded hotels. Defendant Hilton Hotels held out Hampton Inn branded hotels to the public as possessing authority to act on its behalf.

g.   Given Defendant Hilton Hotel's public statements on behalf of its hotel brands and the control it assumed in educating, implementing, and directing its branded hotels, including Hampton Inn hotels, Defendant Hilton Hotels breached its duties in the following ways:

<ul style="list-style:none">
<li>i.   did not adequately distribute information to assist employees in identifying human trafficking;</li>
<li>ii.   failed to provide a process for escalating human trafficking concerns within the organization;</li>
<li>iii.   failed to mandate managers, employees, or owners attend training related to human trafficking;</li>
<li>iv.   failed to provide new hire orientation on human rights and corporate responsibility;</li>
<li>v.   failed to provide training and education on human trafficking through</li>
</ul>

webinars, seminars, conferences, and online portals;

vi.    failed to develop and hold or require ongoing training sessions on human trafficking; or

vii.    failed to provide checklists, escalation protocols and information to property management staff or tracking performance indicators and key metrics on human trafficking prevention.

h.    For years, Defendant Hilton Hotels has demonstrated willful blindness to the rampant culture of sex trafficking which tragically occurs on its Hampton Inn branded properties throughout the country. This same entrenched, pervasive willful blindness to sex trafficking facilitated the sex trafficking of the Plaintiff S. Y. at the Hampton Inn branded hotel that forms the basis of this complaint.

75.    INTERCONTINENTAL HOTELS GROUP RESOURCES, LLC AND INTER-CONTINENTAL HOTELS CORPORATION ("IHG Hotels"):

a.    Defendant IHG Hotels owns, supervises, or operates the Holiday Inn Express located at 1837 Tollgate Boulevard, Naples, FL 34104 and the Staybridge Suites Naples-Gulf Coast located at 4805 Tamiami Trail N, Naples, FL 34103. IHG Hotels failed to implement and enforce any of its own policy or policies and protect Plaintiff S. Y. from being sex trafficked.

b.    IHG Hotels knew or should have known that the Holiday Inn Express hotel and the Staybridge Suites hotels where Plaintiff S. Y. was trafficked were areas known for high incidence of crime and prone to sex trafficking activity on and around the hotel premises, including when Plaintiff S. Y. was trafficked.

c.    Despite having knowledge of the extensive prostitution and sex trafficking that

occurs at its hotels, Defendant IHG Hotels has repeatedly failed to stop these actions.

d.   Defendant IHG hotels could have exercised control over its Holiday Inn Express branded hotels and its Staybridge Suites branded hotels by:

   i.   distributing information to assist employees in identifying human trafficking;

   ii.   providing a process for escalating human trafficking concerns within the organization;

   iii.   requiring employees to attend training related to human trafficking;

   iv.   providing new hire orientation on human rights and corporate responsibility;

   v.   providing training and education to its Holiday Inn Express branded hotels and its Staybridge Suites branded hotels through webinars, seminars, conferences, and online portals;

   vi.   developing and holding ongoing training sessions on human trafficking; or

   vii.   providing checklists, escalation protocols and information to property management staff; or tracking performance indicators and key metrics on human trafficking prevention.

e.   IHG Hotels was in an agency relationship with Holiday Inn Express branded hotels and Staybridge Suites branded hotels offering public lodging services in these hotels. This agency relationship was created through Defendant IHG Hotels' exercise of an ongoing and systemic right of control over Holiday Inn

29

Express branded hotels and Staybridge Suites branded hotels by Defendant IHG Hotels' operations, including the means and methods of how Holiday Inn Express branded hotels and Staybridge Suites branded hotels conducted daily business through one or more of the following actions:

    i.    hosting online bookings on Defendant IHG Hotels' domain;

    ii.    requiring Holiday Inn Express branded hotels and Staybridge Suites branded hotels to use Defendant IHG Hotels' customer rewards program;

    iii.    setting employee wages;

    iv.    making employment decisions;

    v.    advertising for employment;

    vi.    sharing profits;

    vii.    standardized training methods for employees;

    viii.    building and maintaining the facility in a manner specified by the owner;

    ix.    standardized or strict rules of operation;

    x.    regular inspection of the facility and operation by owner;

    xi.    fixing prices; or

    xii.    other actions that deprive Holiday Inn Express branded hotels and Staybridge Suites branded hotels of independence in business operations.

f.    An apparent agency also exists between Defendant IHG Hotels and Holiday Inn Express branded hotels. Similarly, an apparent agency also exists between

Defendant IHG Hotels and Staybridge Suites branded hotels. Defendant IHG Hotels held out Holiday Inn Express branded hotels and Staybridge Suites branded hotels to the public as possessing authority to act on its behalf.

g.     Given Defendant IHG Hotels' public statements on behalf of its hotel brands and the control it assumed in educating, implementing, and directing its branded hotels, including Holiday Inn Express branded hotels and Staybridge Suites branded hotels, Defendant IHG Hotels breached its duties in the following ways:

    i.     did not adequately distribute information to assist employees in identifying human trafficking;

    ii.     failed to provide a process for escalating human trafficking concerns within the organization;

    iii.     failed to mandate managers, employees, or owners attend training related to human trafficking;

    iv.     failed to provide new hire orientation on human rights and corporate responsibility;

    v.     failed to provide training and education on human trafficking through webinars, seminars, conferences, and online portals;

    vi.     failed to develop and hold or require ongoing training sessions on human trafficking; or

    vii.     failed to provide checklists, escalation protocols and information to property management staff or tracking performance indicators and key metrics on human trafficking prevention.

h.     For years, Defendant IHG Hotels has demonstrated willful blindness to the

rampant culture of sex trafficking which tragically occurs on its Quality Inn branded properties and its Comfort Inn branded properties throughout the country. This same entrenched, pervasive willful blindness to sex trafficking facilitated the sex trafficking of Plaintiff S. Y. at Quality Inn branded hotels and Comfort Inn branded hotels that form the basis of this complaint.

76.    MARRIOTT INTERNATIONAL, INC., MARRIOTT HOTEL SERVICES, INC., MARS MERGER SUB, LLC, STARWOOD HOTELS & RESORTS WORLDWIDE, INC AND STARWOOD HOTELS & RESORTS WORLDWIDE, LLC ("Marriott Hotels"):

a.    Defendant Marriott Hotels owns, supervises, or operates the Residence Inn by Marriott Naples located at 4075 Tamiami Trail N, Naples, FL 34103 and the Fairfield Inn & Suites by Marriott Naples located at 3808 White Lake Blvd, Naples, FL 34117. Marriott Hotels failed to implement and enforce any of its own policy or policies and protect Plaintiff S. Y. from being sex trafficked.

b.    Marriott Hotels knew or should have known that the Residence Inn by Marriott and the Fairfield Inn by Marriott hotels where Plaintiff S. Y. was trafficked were areas known for high incidence of crime and prone to sex trafficking activity on and around the hotel premises, including when Plaintiff S. Y. was trafficked.

c.    Despite having knowledge of the extensive prostitution and sex trafficking that occurs at its hotels, Defendant Marriott Hotels has repeatedly failed to stop these actions.

d.    Defendant Marriott Hotels could have exercised control over its Residence Inn branded hotels and its Fairfield Inn branded hotels by:

i. distributing information to assist employees in identifying human trafficking;

ii. providing a process for escalating human trafficking concerns within the organization;

iii. requiring employees to attend training related to human trafficking;

iv. providing new hire orientation on human rights and corporate responsibility;

v. providing training and education to its Residence Inn branded hotels and its Fairfield Inn branded hotels through webinars, seminars, conferences, and online portals;

vi. developing and holding ongoing training sessions on human trafficking; or

vii. providing checklists, escalation protocols and information to property management staff; or tracking performance indicators and key metrics on human trafficking prevention.

e. Marriott Hotels was in an agency relationship with Residence Inn branded hotels and with Fairfield Inn branded hotels offering public lodging services in these hotels. This agency relationship was created through Defendant Marriott Hotels' exercise of an ongoing and systemic right of control over Residence Inn branded hotels and over Fairfield Inn branded hotels by Defendant Marriott Hotels' operations, including the means and methods of how Residence Inn branded hotels and Fairfield Inn branded hotels conducted daily business through one or more of the following actions:

i.     hosting online bookings on Defendant Marriott Hotels' domain;

ii.    requiring Residence Inn branded hotels and Fairfield Inn branded hotels to use Defendant Marriott Hotels' customer rewards program;

iii.   setting employee wages;

iv.   making employment decisions;

v.    advertising for employment;

vi.   sharing profits;

vii.  standardized training methods for employees;

viii. building and maintaining the facility in a manner specified by the owner;

ix.   standardized or strict rules of operation;

x.    regular inspection of the facility and operation by owner;

xi.   fixing prices; or

xii.  other actions that deprive Residence Inn branded hotels and Fairfield Inn branded hotels of independence in business operations.

f.    An apparent agency also exists between Defendant Marriott Hotels and Residence Inn branded hotels. Similarly, an apparent agency also exists between Defendant Marriott Hotels and Fairfield Inn branded hotels. Defendant Marriott Hotels held out Residence Inn branded hotels and Fairfield Inn branded hotels to the public as possessing authority to act on its behalf.

g.    Given Defendant Marriott Hotels' public statements on behalf of its hotel brands and the control it assumed in educating, implementing, and directing its branded

hotels, including Residence Inn branded hotels and Fairfield Inn branded hotels, Defendant Marriott Hotels breached its duties in the following way:

    i.    did not adequately distribute information to assist employees in identifying human trafficking;

    ii.    failed to provide a process for escalating human trafficking concerns within the organization;

    iii.    failed to mandate managers, employees, or owners attend training related to human trafficking;

    iv.    failed to provide new hire orientation on human rights and corporate responsibility;

    v.    failed to provide training and education on human trafficking through webinars, seminars, conferences, and online portals;

    vi.    failed to develop and hold or require ongoing training sessions on human trafficking; or

    vii.    failed to provide checklists, escalation protocols and information to property management staff or tracking performance indicators and key metrics on human trafficking prevention.

h.    For years, Defendant Marriott Hotels has demonstrated willful blindness to the rampant culture of sex trafficking which tragically occurs on its Residence Inn branded properties and its Fairfield Inn branded properties throughout the country. This same entrenched, pervasive willful blindness to sex trafficking facilitated the sex trafficking of Plaintiff S. Y. at Residence Inn branded hotels and Fairfield Inn branded hotels that form the basis of this complaint.

77.     WYNDHAM FRANCHISOR, LLC and WYNDHAM HOTELS & RESORTS, INC. ("Wyndham Hotels"):

     a.   Defendant Wyndham Hotels owned, supervised, or operated the La Quinta Inn & Suites by Wyndham Naples Downtown located at 1555 5th Ave S, Naples, FL 34102, the La Quinta Inn & Suites by Wyndham Naples East located at 185 Bedzel Cir. Naples, FL 34104, the Days Inn & Suites by Wyndham Bonita Springs North Naples located at 27991 Oakland Dr, Bonita Springs, FL 34135 the Super 8 by Wyndham Naples at 3880 Tollgate Blvd, Naples, FL 34114 and the Ramada by Wyndham Naples at 1100 Tamiami Trail N, Naples, FL 34102. Wyndham Hotels failed to implement and enforce any of its own policy or policies and protect Plaintiffs S. Y. and C. S. from being sex trafficked.

     b.   Wyndham Hotels knew or should have known that the La Quinta Inn branded hotels, the Super 8 branded hotels, Ramada branded hotels and the Days Inn branded hotel where Plaintiffs S. Y. and C. S. were trafficked were areas known for high incidence of crime and prone to sex trafficking activity on and around the hotel premises, including when Plaintiffs S. Y. and C. S. were trafficked.

     c.   Despite having knowledge of the extensive prostitution and sex trafficking that occurs at its hotels, Defendant Wyndham Hotels has repeatedly failed to stop these actions.

     d.   Defendant Wyndham Hotels could have exercised control over its La Quinta Inn branded hotels, its Super 8 branded hotels, its Ramada branded hotels and its Days Inn branded hotels by:

i.      distributing information to assist employees in identifying human trafficking;

ii.     providing a process for escalating human trafficking concerns within the organization;

iii.    requiring employees to attend training related to human trafficking;

iv.     providing new hire orientation on human rights and corporate responsibility;

v.      providing training and education to La Quinta Inn branded hotels, Super 8 branded hotels, Ramada branded hotels and Days Inn branded hotels through webinars, seminars, conferences, and online portals;

vi.     developing and holding ongoing training sessions on human trafficking; or

vii.    providing checklists, escalation protocols and information to property management staff; or tracking performance indicators and key metrics on human trafficking prevention.

e.      Wyndham Hotels was in an agency relationship with its La Quinta Inn branded hotels offering public lodging services in the hotel. Similarly, Wyndham Hotels was in an agency relationship with its Super 8 branded hotels, Ramada branded hotels and its Days Inn branded hotels. This agency relationship was created through Defendant Wyndham Hotels' exercise of an ongoing and systemic right of control over La Quinta Inn branded hotels, Super 8 branded hotels, Ramada branded hotels and Days Inn branded hotels by Defendant Wyndham Hotels' operations, including the means and methods of how La Quinta Inn branded

hotels, Super 8 branded hotels, Ramada branded hotels and Days Inn branded hotels conducted daily business through one or more of the following actions:

    i.      hosting online bookings on Defendant Wyndham Hotels' domain;

    ii.      requiring La Quinta Inn branded hotels, Super 8 branded hotels, Ramada branded hotels and Days Inn branded hotels to use Defendant Wyndham Hotel's customer rewards program;

    iii.      setting employee wages;

    iv.      making employment decisions;

    v.      advertising for employment;

    vi.      sharing profits;

    vii.      standardized training methods for employees;

    viii.      building and maintaining the facility in a manner specified by the owner;

    ix.      standardized or strict rules of operation;

    x.      regular inspection of the facility and operation by owner;

    xi.      fixing prices; or

    xii.      other actions that deprive La Quinta Inn branded hotels, Super 8 branded hotels, Ramada branded hotels and Days Inn branded hotels of independence in business operations.

f.    An apparent agency also exists between Defendant Wyndham Hotels and La Quinta Inn branded hotels. Similarly, apparent agency also exists between Defendant Wyndham Hotels and Days Inn branded hotels and Defendant Wyndham Hotels and Super 8 branded hotels, Defendant Wyndham Hotels and

Ramada branded hotels.   Defendant Wyndham Hotels held out La Quinta Inn branded hotels, Super 8 branded hotels, Ramada branded hotels and Days Inn branded hotels to the public as possessing authority to act on its behalf.

g.   Given Defendant Wyndham Hotel's public statements on behalf of its hotel brands and the control it assumed in educating, implementing, and directing its branded hotels, including La Quinta Inn branded hotels, Super 8 branded hotels, Ramada branded hotels and Days Inn branded hotels, Defendant Wyndham Hotels breached its duties in the following ways:

    i.   did not adequately distribute information to assist employees in identifying human trafficking;

    ii.   failed to provide a process for escalating human trafficking concerns within the organization;

    iii.   failed to mandate managers, employees, or owners attend training related to human trafficking;

    iv.   failed to provide new hire orientation on human rights and corporate responsibility;

    v.   failed to provide training and education on human trafficking through webinars, seminars, conferences, and online portals;

    vi.   failed to develop and hold or require ongoing training sessions on human trafficking; or

    vii.   failed to provide checklists, escalation protocols and information to property management staff or tracking performance indicators and key metrics on human trafficking prevention.

    h.    For years, Defendant Wyndham Hotels has demonstrated willful blindness to the rampant culture of sex trafficking which tragically occurs on its La Quinta Inn branded properties, its Super 8 branded properties, its Ramada branded properties and its Days Inn branded properties throughout the country. This same entrenched, pervasive willful blindness to sex trafficking facilitated the sex trafficking of the Plaintiffs. at La Quinta Inn branded hotels, Super 8 branded hotels, Ramada branded hotels and the Days Inn branded hotel that form the basis of this complaint.

78.    CHOICE HOTELS INTERNATIONAL, INC. ("Choice Hotels"):

    a.    Defendant Choice Hotels owns, supervises, or operates the Quality Inn Suites Golf Resort located at 4100 Golden Gate Pkwy, Naples, FL 34116 and Comfort Inn & Executive Suites located at 3860 Tollgate Blvd, Naples, FL 34114. Choice Hotels failed to implement and enforce any of its own policy or policies and protect Plaintiffs S. Y. and C. S. from being sex trafficked.

    b.    Choice Hotels knew or should have known that the Quality Inn Suites Golf Resort hotel and the Comfort Inn & Executive Suites Inn hotel where Plaintiffs S. Y. and C. S. were trafficked were areas known for high incidence of crime and prone to sex trafficking activity on and around the hotel premises, including when Plaintiffs S. Y. and C. S. were trafficked.

    c.    Despite having knowledge of the extensive prostitution and sex trafficking that occurs at its hotels, Defendant Choice Hotels has repeatedly failed to stop these actions.

d.   Defendant Choice Hotels could have exercised control over Quality Inn branded hotels and its Comfort Inn branded hotels by:

  i.   distributing information to assist employees in identifying human trafficking;

  ii.   providing a process for escalating human trafficking concerns within the organization;

  iii.   requiring employees to attend training related to human trafficking;

  iv.   providing new hire orientation on human rights and corporate responsibility;

  v.   providing training and education to Quality Inn branded hotels and Comfort Inn branded hotels through webinars, seminars, conferences, and online portals;

  vi.   developing and holding ongoing training sessions on human trafficking; or

  vii.   providing checklists, escalation protocols and information to property management staff; or tracking performance indicators and key metrics on human trafficking prevention.

e.   Choice Hotels was in an agency relationship with Quality Inn branded hotels and Comfort Inn branded hotels offering public lodging services in these hotels. This agency relationship was created through Defendant Choice Hotels' exercise of an ongoing and systemic right of control over Quality Inn hotels and Comfort Inn hotels by Defendant Choice Hotels' operations, including the

means and methods of how Quality Inn branded hotels and Comfort Inn branded

hotels conducted daily business through one or more of the following actions:

    i.      hosting online bookings on Defendant Choice Hotels' domain;

    ii.      requiring Quality Inn branded hotels and Comfort Inn branded hotels
          to use Defendant Choice Hotels' customer rewards program;

    iii.      setting employee wages;

    iv.      making employment decisions;

    v.      advertising for employment;

    vi.      sharing profits;

    vii.      standardized training methods for employees;

    viii.      building and maintaining the facility in a manner specified by the
          owner;

    ix.      standardized or strict rules of operation;

    x.      regular inspection of the facility and operation by owner;

    xi.      fixing prices; or

    xii.      other actions that deprive Quality Inn branded hotels and Comfort Inn
          branded hotels of independence in business operations.

f.    An apparent agency also exists between Defendant Choice Hotels and Quality

Inn branded hotels. Similarly, an apparent agency also exists between Defendant

Choice Hotels and Comfort Inn branded hotels. Defendant Choice Hotels held

out Quality Inn branded hotels and Comfort Inn branded hotels to the public as

possessing authority to act on its behalf.

g.  Given Defendant Choice Hotels' public statements on behalf of its hotel brands and the control it assumed in educating, implementing, and directing its branded hotels, including Quality Inn branded hotels and Comfort Inn branded hotels, Defendant Choice Hotels breached its duties in the following ways:

  i.  did not adequately distribute information to assist employees in identifying human trafficking;

  ii.  failed to provide a process for escalating human trafficking concerns within the organization;

  iii.  failed to mandate managers, employees, or owners attend training related to human trafficking;

  iv.  failed to provide new hire orientation on human rights and corporate responsibility;

  v.  failed to provide training and education on human trafficking through webinars, seminars, conferences, and online portals;

  vi.  failed to develop and hold or require ongoing training sessions on human trafficking; or

  vii.  failed to provide checklists, escalation protocols and information to property management staff or tracking performance indicators and key metrics on human trafficking prevention.

h.  For years, Defendant Choice Hotels has demonstrated willful blindness to the rampant culture of sex trafficking which tragically occurs on its Quality Inn branded properties and its Comfort Inn branded properties throughout the country. This same entrenched, pervasive willful blindness to sex trafficking

43

facilitated the sex trafficking of Plaintiffs S. Y. and C. S. at Quality Inn branded hotels and trafficking of Plaintiff S. Y. at the Comfort Inn branded hotels that form the basis of this complaint.

79. NAPLES GARDEN INN, LLC ("Naples Garden Inn"):

    a.    Defendant Naples Garden Inn owned, supervised, or operates the Naples Garden Inn, located at 2630 Tamiami Trail N, Naples, FL 34103. Naples Garden Inn failed to implement and enforce any of its own policy or policies and protect Plaintiff S. Y. from being sex trafficked.

    b.    Naples Garden Inn knew or should have known that the Naples Garden Inn property where Plaintiff S. Y. was trafficked was an area known for high incidence of crime and prone to sex trafficking activity on and around the hotel premises, including when Plaintiff S. Y. was trafficked.

    c.    Despite having knowledge of the extensive prostitution and sex trafficking that occurs at its hotel, Defendant Naples Garden Inn has repeatedly failed to stop these actions.

    d.    Defendant Naples Garden Inn could have exercised control over its Naples Garden Inn hotel property by:

        i.    distributing information to assist employees in identifying human trafficking;

        ii.    providing a process for escalating human trafficking concerns within the organization;

        iii.    requiring employees to attend training related to human trafficking;

iv.       providing new hire orientation on human rights and corporate responsibility;

v.       providing training and education to its hotel employees through webinars, seminars, conferences, and online portals;

vi.      developing and holding ongoing training sessions on human trafficking; or

vii.     providing checklists, escalation protocols and information to property management staff; or tracking performance indicators and key metrics on human trafficking prevention.

e.    For years, Defendant Naples Garden Inn has demonstrated willful blindness to the rampant culture of sex trafficking which tragically occurs on its property. This same entrenched, pervasive willful blindness to sex trafficking facilitated the sex trafficking of Plaintiff S. Y. at the Naples Garden Inn property that forms the basis of this complaint.

80.   NAPLES PARK CENTRAL HOTEL, LLC ("Naples Park Central Hotel"):

a.    Defendant Naples Park Central Hotel owned, supervised, or operates the Naples Park Central Hotel, located at 40 9th St N, Naples, FL 34102. Naples Park Central Hotel failed to implement and enforce any of its own policy or policies and protect Plaintiff S. Y. from being sex trafficked.

b.    Naples Park Central Hotel knew or should have known that the Naples Park Central Hotel property where Plaintiff S. Y. was trafficked was an area known for high incidence of crime and prone to sex trafficking activity on and around the hotel premises, including when Plaintiff S. Y. was trafficked.

c.   Despite having knowledge of the extensive prostitution and sex trafficking that occurs at its hotel, Defendant Naples Park Central Hotel has repeatedly failed to stop these actions.

d.   Defendant Naples Park Central Hotel could have exercised control over its Naples Park Central hotel property by:

   i.   distributing information to assist employees in identifying human trafficking;

   ii.   providing a process for escalating human trafficking concerns within the organization;

   iii.   requiring employees to attend training related to human trafficking;

   iv.   providing new hire orientation on human rights and corporate responsibility;

   v.   providing training and education to its hotel employees through webinars, seminars, conferences, and online portals;

   vi.   developing and holding ongoing training sessions on human trafficking; or

   vii.   providing checklists, escalation protocols and information to property management staff; or tracking performance indicators and key metrics on human trafficking prevention.

e.   For years, Defendant Naples Park Central Hotel has demonstrated willful blindness to the rampant culture of sex trafficking which tragically occurs on its property. This same entrenched, pervasive willful blindness to sex trafficking facilitated the sex trafficking of Plaintiff S. Y. at the Naples Park Central Hotel

46

property that forms the basis of this complaint.

81.     UOMI & KUDAI, LLC ("Spinnaker Inn"):

a.      Defendant Spinnaker Inn owned, supervised, or operated the Spinnaker Inn of Naples located at 6600 Dudley Dr, Naples, FL 34105. Spinnaker Inn failed to implement and enforce any of its own policy or policies and protect Plaintiff S. Y. from being sex trafficked.

b.      Spinnaker Inn knew or should have known that the Spinnaker Inn of Naples where Plaintiff S. Y. was trafficked was an area known for high incidence of crime and prone to sex trafficking activity on and around the hotel premises, including when Plaintiff S. Y. was trafficked.

c.      Despite having knowledge of the extensive prostitution and sex trafficking that occurs at its hotel, Defendant Spinnaker Inn has repeatedly failed to stop these actions.

d.      Defendant Spinnaker Inn could have exercised control over the Spinnaker Inn of Naples hotel property by:

i.      distributing information to assist employees in identifying human trafficking;

ii.     providing a process for escalating human trafficking concerns within the organization;

iii.    requiring employees to attend training related to human trafficking;

iv.     providing new hire orientation on human rights and corporate responsibility;

> v.      providing training and education to its hotel employees through webinars, seminars, conferences, and online portals;
>
> vi.     developing and holding ongoing training sessions on human trafficking; or
>
> vii.    providing checklists, escalation protocols and information to property management staff; or tracking performance indicators and key metrics on human trafficking prevention.

e.    For years, Defendant Spinnaker Inn has demonstrated willful blindness to the rampant culture of sex trafficking which tragically occurs on their property. This same entrenched, pervasive willful blindness to sex trafficking facilitated the sex trafficking of Plaintiff S. Y. at the Spinnaker Inn of Naples hotel that forms the basis of this complaint.

82.    SHIVPARVTI, LLC AND MASTER CLEANERS PRO SERVICES INC. ("Sunrise Motel"):

a.    Defendant Sunrise Motel owned, supervised, or operated the Sunrise Motel located at 2486 Tamiami Trail E, Naples, FL 34112. Sunrise Motel failed to implement and enforce any of its own policy or policies and protect Plaintiff S. Y. from being sex trafficked.

b.    Upon information and belief the Sunrise Motel property was sold by Shivparvti, LLC in 2019 to Master Cleaners Pro Services, Inc.

c.    Sunrise Motel knew or should have known that the Sunrise Motel property where Plaintiff S. Y. was trafficked was an area known for high incidence of crime and prone to sex trafficking activity on and around the hotel premises, including

when Plaintiff S. Y. was trafficked.

d.   Despite having knowledge of the extensive prostitution and sex trafficking that occurs at its hotel, Defendants Sunrise Motel have repeatedly failed to stop these actions.

e.   Defendants Sunrise Motel could have exercised control over its Sunrise Motel property by:

　　i.   distributing information to assist employees in identifying human trafficking;

　　ii.   providing a process for escalating human trafficking concerns within the organization;

　　iii.   requiring employees to attend training related to human trafficking;

　　iv.   providing new hire orientation on human rights and corporate responsibility;

　　v.   providing training and education to its hotel employees through webinars, seminars, conferences, and online portals;

　　vi.   developing and holding ongoing training sessions on human trafficking; or

　　vii.   providing checklists, escalation protocols and information to property management staff; or tracking performance indicators and key metrics on human trafficking prevention.

f.   For years, Defendants Sunrise Motel have demonstrated willful blindness to the rampant culture of sex trafficking which tragically occurs on their property. This same entrenched, pervasive willful blindness to sex trafficking facilitated the

sex trafficking of Plaintiff S. Y. at the Sunrise Motel property that forms the basis of this complaint.

83.   HOLISTIC HEALTH HEALING, INC. ("Conty's Motel"):

  a.   Defendant Conty's Motel owned, supervised, or operated Conty's Motel located at 11238 Tamiami Trail E, Naples, FL 34113. Conty's Motel failed to implement and enforce any of its own policy or policies and protect Plaintiff S. Y. from being sex trafficked.

  b.   Conty's Motel knew or should have known that the Conty's Motel property where Plaintiff S. Y. was trafficked was an area known for high incidence of crime and prone to sex trafficking activity on and around the hotel premises, including when Plaintiff S. Y. was trafficked.

  c.   Despite having knowledge of the extensive prostitution and sex trafficking that occurs at its hotel, Defendant Conty's Motel has repeatedly failed to stop these actions.

  d.   Defendant Conty's Motel could have exercised control over its Conty's Motel property by:

      i.   distributing information to assist employees in identifying human trafficking;

      ii.   providing a process for escalating human trafficking concerns within the organization;

      iii.   requiring employees to attend training related to human trafficking;

      iv.   providing new hire orientation on human rights and corporate responsibility;

50

v.    providing training and education to its hotel employees through webinars, seminars, conferences, and online portals;

vi.    developing and holding ongoing training sessions on human trafficking; or

vii.    providing checklists, escalation protocols and information to property management staff; or tracking performance indicators and key metrics on human trafficking prevention.

e.    For years, Defendant Conty's Motel has demonstrated willful blindness to the rampant culture of sex trafficking which tragically occurs on its property. This same entrenched, pervasive willful blindness to sex trafficking facilitated the sex trafficking of Plaintiff S. Y. at Conty's Motel property that forms the basis of this complaint.

84.    RADHEY, INC. ("Tamiami Motel"):

a.    Defendant Tamiami Motel owned, supervised, or operated Tamiami Motel located at 2164 Tamiami Trail E, Naples, FL 34112. Tamiami Motel failed to implement and enforce any of its own policy or policies and protect Plaintiff S. Y. from being sex trafficked.

b.    Tamiami Motel knew or should have known that the Tamiami Motel property where Plaintiff S. Y. was trafficked was an area known for high incidence of crime and prone to sex trafficking activity on and around the hotel premises, including when Plaintiff S. Y. was trafficked.

c.    Despite having knowledge of the extensive prostitution and sex trafficking that occurs at its hotel, Defendant Tamiami Motel has repeatedly failed to stop these

actions.

d.  Defendant Tamiami Motel could have exercised control over its Tamiami Motel property by:

   i.  distributing information to assist employees in identifying human trafficking;

   ii.  providing a process for escalating human trafficking concerns within the organization;

   iii.  requiring employees to attend training related to human trafficking;

   iv.  providing new hire orientation on human rights and corporate responsibility;

   v.  providing training and education to its hotel employees through webinars, seminars, conferences, and online portals;

   vi.  developing and holding ongoing training sessions on human trafficking; or

   vii.  providing checklists, escalation protocols and information to property management staff; or tracking performance indicators and key metrics on human trafficking prevention.

e.  For years, Defendant Tamiami Motel has demonstrated willful blindness to the rampant culture of sex trafficking which tragically occurs on its property. This same entrenched, pervasive willful blindness to sex trafficking facilitated the sex trafficking of Plaintiff S. Y. at Tamiami Motel property that forms the basis of this complaint.

85.   JAY VARAHIMATA INVESTMENTS, LLC ("Glades Motel"):

    a.   Defendant Glades Motel owned, supervised, or operated the Glades Motel located at 3115 Tamiami Trail E, Naples, FL 34112. Glades Motel failed to implement and enforce any of its own policy or policies and protect Plaintiff S. Y. from being sex trafficked.

    b.   Glades Motel knew or should have known that the Glades Motel property where Plaintiff S. Y. was trafficked was an area known for high incidence of crime and prone to sex trafficking activity on and around the hotel premises, including when Plaintiff S. Y. was trafficked.

    c.   Despite having knowledge of the extensive prostitution and sex trafficking that occurs at its hotel, Defendant Glades Motel has repeatedly failed to stop these actions.

    d.   Defendant Glades Motel could have exercised control over its Glades Motel property by:

        i.   distributing information to assist employees in identifying human trafficking;

        ii.   providing a process for escalating human trafficking concerns within the organization;

        iii.   requiring employees to attend training related to human trafficking;

        iv.   providing new hire orientation on human rights and corporate responsibility;

        v.   providing training and education to its hotel employees through webinars, seminars, conferences, and online portals;

vi.      developing and holding ongoing training sessions on human trafficking; or

vii.     providing checklists, escalation protocols and information to property management staff; or tracking performance indicators and key metrics on human trafficking prevention.

e.     For years, Defendant Tamiami Motel has demonstrated willful blindness to the rampant culture of sex trafficking which tragically occurs on its property. This same entrenched, pervasive willful blindness to sex trafficking facilitated the sex trafficking of Plaintiff S. Y. at Tamiami Motel property that forms the basis of this complaint.

86.    NAPLES HOTEL COMPANY and THE GULFCOAST INN OF NAPLES OWNERS ASSOCIATION, INC., ("Gulfcoast Inn"):

a.     Defendants Gulfcoast Inn owned, supervised, or operate the Gulfcoast Inn Naples, located at 2555 Tamiami Trail N, Naples, FL 34103. Gulfcoast Inn failed to implement and enforce any of its own policy or policies and protect Plaintiffs S. Y. and C. S. from being sex trafficked.

b.     Defendants Gulfcoast Inn knew or should have known that the Gulfcoast Inn Naples hotel where Plaintiffs S. Y. and C. S. were trafficked was an area known for high incidence of crime and prone to sex trafficking activity on and around the hotel premises, including when Plaintiffs S. Y. and C. S. were trafficked.

c.     Despite having knowledge of the extensive prostitution and sex trafficking that occurs at their hotel, Defendants Gulfcoast Inn has repeatedly failed to stop these actions.

    d.    Defendants Gulfcoast Inn could have exercised control over Gulfcoast Inn Naples hotel by:

        i.    distributing information to assist employees in identifying human trafficking;

        ii.    providing a process for escalating human trafficking concerns within the organization;

        iii.    requiring employees to attend training related to human trafficking;

        iv.    providing new hire orientation on human rights and corporate responsibility;

        v.    providing training and education to Gulfcoast Inn Naples hotel through webinars, seminars, conferences, and online portals;

        vi.    developing and holding ongoing training sessions on human trafficking; or

        vii.    providing checklists, escalation protocols and information to property management staff; or tracking performance indicators and key metrics on human trafficking prevention.

    e.    For years, Defendants Gulfcoast Inn have demonstrated willful blindness to the rampant culture of sex trafficking which tragically occurs on their property. This same entrenched, pervasive willful blindness to sex trafficking facilitated the sex trafficking of Plaintiffs S. Y. and C. S. at the Gulfcoast Inn Naples hotel that forms the basis of this complaint.

87.    INN OF NAPLES, LLC ("Inn of Naples"):

    a.    Defendant Inn of Naples owned, supervised, or operate the Inn of Naples hotel,

located at 4055 Tamiami Trail N, Naples, FL 34103. Inn of Naples failed to implement and enforce any of its own policy or policies and protect Plaintiffs S. Y. and C. S. from being sex trafficked.

b.   Inn of Naples knew or should have known that the Inn of Naples hotel where Plaintiffs S. Y. and C. S. were trafficked was an area known for high incidence of crime and prone to sex trafficking activity on and around the hotel premises, including when Plaintiffs S. Y. and C. S. were trafficked.

c.   Despite having knowledge of the extensive prostitution and sex trafficking that occurs at its hotel, Defendant Inn of Naples has repeatedly failed to stop these actions.

d.   Defendant Inn of Naples could have exercised control over Inn of Naples hotel by:

    i.   distributing information to assist employees in identifying human trafficking;

    ii.   providing a process for escalating human trafficking concerns within the organization;

    iii.   requiring employees to attend training related to human trafficking;

    iv.   providing new hire orientation on human rights and corporate responsibility;

    v.   providing training and education to Inn of Naples hotel through webinars, seminars, conferences, and online portals;

    vi.   developing and holding ongoing training sessions on human trafficking; or

        vii.      providing checklists, escalation protocols and information to property management staff, or tracking performance indicators and key metrics on human trafficking prevention.

        e.      For years, Defendant Inn of Naples have demonstrated willful blindness to the rampant culture of sex trafficking which tragically occurs on their property. This same entrenched, pervasive willful blindness to sex trafficking facilitated the sex trafficking of Plaintiffs S. Y. and C. S. at the Inn of Naples hotel that forms the basis of this complaint.

88.     The Defendants are for-profit hotels and/or public lodging establishments pursuant to Chapter 509 of the Florida Statutes,  which imposes legal responsibilities upon hotels, like those owned and operated by the Defendants, to take action to protect people.

89.     The Defendants' hotel premises include a common space, private rooms and parking lot, which abuts to a sidewalk or land which the Defendant has possession, custody, or control of as it relates to the Defendants' business of providing public lodging.[1]

90.     The Defendants' hotel premises abut to pathways and/or parking lots and they were or should have been aware that these neighboring parking lots, pathways, other driveways were being used by their patrons to traverse to and from the Defendants' hotels, thereby expanding the zone where the Defendants were to have prevented foreseeable risks of injury to the Plaintiff.[2]

91.     At all material times, Defendants individually and/or by and through their actual or apparent agents, servants, franchisees and/or employees were uniquely positioned to observe the

---

[1] If customers or clients are invited to use a convenient parking lot then the business owner may be liable for injuries they sustain on that lot even if it is not technically within the business' property line. *See Gutierrez v. Dade County School Bd.*, 604 So. 2d 852, 77 Ed. Law Rep. 1052 (Fla. 3d DCA 1992).

[2] *Borda v. East Coast Entertainment, Inc.*, 950 So. 2d 488 (Fla. 4th DCA 2007).

manifestations or indications of human sex trafficking and human sex trafficking victims within the Defendants' hotels where they worked.

92.     At all material times, Defendants' agents/servants and/or employees were uniquely positioned to observe the manifestations or indications of human sex trafficking and victims within the hotels where they worked.

93.     The Defendants individually and/ or by their actual or apparent agents, servants, franchisees and/or employees knew or had constructive knowledge, that they were renting or otherwise providing rooms and services to individuals, such as human sex trafficker, who were engaged in the commercial sex trade.

94.     The Defendants individually and/or by their actual or apparent agents, servants, franchisees and/or employees, knew or had constructive knowledge, that the women with Plaintiffs' sex traffickers, such as Plaintiffs S. Y. and C. S., were used to carry out the commercial sex trade and sale of illegal drugs.

95.     The Defendants individually and/or by their actual or apparent agents, servants, franchisees and/or employees knew or should have known of suspicious activity and that by failing to inspect and make their hotel premises safe from criminal activity, it was foreseeable that illegal activity was, and would continue to be, carried out on their premises, It follows then that as hoteliers, the Defendants could reasonably foresee that sex crimes, human trafficking or other foreseeable acts were occurring on their premises and/or were being committed against hotel guests, such as the Plaintiffs.[3]

---

[3] The Plaintiffs do not allege that the Defendants intended the *injurious* result – the Plaintiffs' permanent bodily and mental harm from sexual exploitation – but rather the Plaintiffs allege that the Defendants knew or should have known of a dangerous condition existed and that by *failing to act* to prevent and make their hotel premises safe that such *failure to act* could foreseeably harm the Plaintiffs or other guests from sexual exploitation.

96.     The Defendants individually and/or by their actual or apparent agents, servants, franchisees and/or employees, knew or had constructive knowledge that the sale and usage of illegal drugs were being performed on the premises.

97.     Moreover, the Defendants' hotel housekeeping, front desk, maintenance, food preparation staff, managers, and pool staff had conversations with the Plaintiffs, and had knowledge, or should have had knowledge, that the Plaintiffs were staying at the hotel for an extended period of time to carry-out various sex trafficking ventures. The Defendants' hotel staff also knew that the Plaintiffs would routinely sleep during the day and walk the premises at night in provocative attire.

98.     Accordingly, at all material times the Defendants received money and financially profited from the forced commercial sex acts that were being carried out by the Plaintiffs on the premises of the Defendants' hotels.

99.     Defendants knew or should have known that they were financially profiting from the continuation of illegal commercial sex acts committed on their premises through both renting of rooms and provision of the Plaintiffs' forced commercial sex services.

100.    Despite knowledge, constructive knowledge and general awareness of the signs of human trafficking, the Defendants, individually and / or by and through their actual or apparent agents, servants, franchisees and/or employees failed to report to authorities, intervene, disrupt, refuse or otherwise stop the human sex trafficking of the Plaintiff.

101.    By harboring the Plaintiffs' sex traffickers and the Plaintiffs' commercial sex and drug acts, the Defendants, by and through their actual or apparent agents, servants, franchisees and/or employees, continued to financially profit from the room occupancy derived from not reporting and not refusing the human sex trafficking of the Plaintiff.

102.    Accordingly, the Defendants continued to financially profit from the room occupancy derived from not protecting their hotel guests, to wit the Plaintiff, from being a continuous victim of human sex trafficking.

103.    While hotel guests on the Defendants' properties, the Plaintiffs were seriously and permanently injured as a direct result of the Defendants' acts and omissions, in that the Defendants permitted, harbored and facilitated illegal sex trafficking ventures to take place on their premises whereby the Plaintiffs were routinely and continuously abused, battered, falsely imprisoned, raped, beaten, starved, forcibly injected with drugs and enslaved.

104.    More specifically, at all material times, the Defendants' acts and omissions caused the Plaintiffs to suffer:

      a.  Forced labor;

      b.  Forced confinement without safe means of escape;

      c.  Assault and fear;

      d.  Sickness, dizziness and headaches;

      e.  Cuts, lacerations, abrasions and other physical harm;

      f.  Property damage;

      g.  Mental anguish, humiliation, exploitation, degradation and mental distress;

      h.  Suffocation, battery and rape;

      i.  Shock, fright and post-traumatic stress;

      j.  Overdose and drug-induced dangers (the Plaintiffs suffered drug overdoses, drug-induced actions which caused harm to themselves, physical deformities and scarfing from actions of the "Johns" and drug

usage);

k.  Invasion of privacy and wrongful entry of "Johns."

105.    The injuries and harms that the Plaintiffs suffered as a result of the Defendants' negligent operations of their hotels and failure to make the premises safe, are of a permanent and/or continuing nature.

106.    The Defendants as hotel operators had a continuing legal duty to protect their hotel guests and other invitees, like the Plaintiff, to use ordinary care to keep the premises in a reasonably safe condition and protect them from harm due to reasonably foreseeable risks of injury, regardless if the guests were utilizing the hotels' common rooms, facilities, exterior passageways, or within the confines of the rented rooms.[4]

107.    The Defendants failed in their duties to the Plaintiffs to provide security and other precautions to prevent the criminal acts upon the Plaintiffs by third parties on a regular basis. The attacks upon the Plaintiffs by the "Johns" and staff persons were foreseeable and thus arose a duty by the Defendants to protect the Plaintiffs.

108.    The Defendants observed, knew or should have known there was a foreseeable increased risk that illegal sex and drug trafficking was occurring on their premises and that the Plaintiffs might be harmed during the rental of the Defendants' hotel rooms.

109.    The Defendants knew or should have known of the dangerous conditions on their premises that was likely to cause harm to the Plaintiff, in the following ways:

a.  Peculiar security problems created by the hotel's design in not monitoring activities;

b.  Presence of suspicious people;

---

[4] 17 Fla. Jur., Hotels, Restaurants, and Motels, § 24; 40 Am.Jur.2d, Hotels, Motels, and Restaurants, § 111.

c. Random people coming in and out of certain room each night to have sex and buy drugs;

d. Rooms routinely filled with about 10 people who engaged in sex and drugs;

e. Loud, boisterous sounds and music in the rooms and public areas throughout the night and day disturbed the quiet enjoyment of other guests;

f. Women and clients would go into hotel parking lot and loiter;

g. Women walking around with cuts, lacerations, abrasions, bruises, injuries and bandages;

h. Women walked around hotel strung out on drugs for days at a time;

i. Women looked tired and haggard due to 24/7 clientele;

j. Women dressed inappropriately for the location and weather;

k. Upon alert by other hotel customers and/or staff of Defendants, the Collier County Sheriff Office ("CCSO") received emergency calls that prostitution was occurring at Defendants' hotel in the rented rooms of the Plaintiffs' sex traffickers and/or the Plaintiffs;[5]

l. Emergency medical technicians from the City of Naples were frequently called to Defendants' hotel premises for drug overdoses and/or injuries occurring in Defendants' hotel rooms that were rented to the Plaintiffs' sex traffickers and/or the Plaintiff; and

m. Defendants knew or should have known there was a foreseeable increased risk that illegal sex trafficking was occurring, and that the Plaintiffs might be harmed. Further that the scope of the anticipated risk to which the

---

[5] Upon information and belief CCSO was present on Defendants' hotel premises on multiple times during the relevant times.

Defendants allowed the Plaintiffs to be exposed and the Plaintiffs were within the zone of risks that were reasonably foreseeable by the Defendants.

110.     To Defendants, as hotel owners and operators, the crime of human sex trafficking was a foreseeable risk because the long history, prevalence and extent of this sex slavery is commonly known in the hospitality industry, the local community and throughout the state; the Defendants as hotel owners and operators are a vehicle with which the crime of human sex trafficking is readily carried out, furthered, harbored and made financially viable.

111.     Significantly, the Defendants knew or should have known there was a foreseeable increased risk that illegal sex trafficking was occurring, that tragic incidents occur as a result, and that the Plaintiffs as hotel guests might be harmed due to prior similar incidents at Defendants' hotels.

112.     Accordingly, the Defendants should have taken steps to prevent sex and drug trafficking in their hotels in accordance with applicable Federal, State and local laws and guidelines.

113.     Accordingly, because human sex trafficking and other illegal activity associated therewith was foreseeable, the Defendants had a duty to take adequate security or remedial measures to protect their guests from criminal activity, to wit, the Plaintiff.

114.     The Plaintiffs' injuries and consequential damages were the direct and proximate result of the Defendants' acts and omissions, namely:

   a. Failure to provide training regarding human trafficking awareness to employees who perform housekeeping duties, maintenance, or who work at the front desk;

   b. Failure to provide guidance on how to identify individuals who may traffickers or their victims of the sex trafficking;

   c. Failure to establish, implement or enforce a protocol on reporting suspected

63

human trafficking;

d. Failure to establish, implement or enforce a protocol to respond to situations involving human trafficking;

e. Failure to enforce provisions within employee manuals or handbook on how to handle general emergency situations or manage criminal risks;

f. Failed to require their agents, servants, franchisees and/or employees to participate, complete and continue education regarding sex trafficking in hotels.

g. Failed to remove and/or refuse subsequent accommodations to the Plaintiffs' sex traffickers when conduct displayed on the premises included a combination of intoxication, profanity, lewdness, or brawling; disturbing the peace or comfort of other guests; illegal activity; disorderly conduct; and drug dealing;

h. Allowed rental of hotel rooms without conferring with senior management notwithstanding the suspicions;

i. Failure to correct or remedy protocols that were defective or ineffective in preventing or handling prior sex and drug trafficking incidents at Defendant's hotel property;

j. Failed to provide adequate security personnel in their hotels to protect their guests;

k. Failed to establish, implement and enforce appropriate security policies and procedures for certain times of day, room locations, and suspicious activity.

l. Permitted unknown persons to loiter, to gain entry to guest hallways, to know room numbers, have access to room keys;

m. Failure to check the background of the hotel employees for sex crimes and other

unlawful acts; and

    n. Otherwise failing to use reasonable care for the safety of their guests.

115.    By failing to act, the Defendants, by and through their actual or apparent agents, servants, franchisees and/or employees, allowed the Plaintiffs to be harbored and confined for sexual acts while collecting rental fees thereon. This willful blindness, gross negligence, or indifference for the health and welfare of the Plaintiffs spanned over many months and exceeds all bounds of decency. Pursuant to Florida's statute 501.204, Defendants have engaged in unconscionable and unfair acts or practices in the conduct of the hospitality industry.

116.    As a further direct and proximate result of the Defendants' conduct and lack of due and reasonable care, the Plaintiffs had incurred expenses, fees, and costs of medical care and attention to their injuries, including: (1) physicians' fees; (2) medications and medical supplies; (4) hospitalizations; and (5) transportation costs to and from various physicians' offices and hospitals.

117.    As a further direct and proximate result of the Defendants' conduct and lack of due and reasonable care, the Plaintiffs has suffered great physical and mental pain, and will continue to suffer such pain for the indefinite future, for which the Plaintiffs should also be compensated by the Defendants.

    **D. The Sex Trafficking of S. Y. and C. S.**

118.    Commencing sometime in approximately 2015, the Plaintiffs were recruited, enticed, solicited, held, harbored as captive and/or arranged for transport to the Defendants' hotel by their sex traffickers to engage in commercial sex acts at the Defendants' hotels on a regular, consistent and/or repeated basis.

119.    At all times material to this Complaint, all Defendants received monetary payment for the rental of rooms to the Plaintiffs and their captors.

120.    At all material times, the Defendants, individually and/or by and through their actual or apparent agents, servants, franchisees and/or employees regularly rented or otherwise provided, for their own benefit, rooms and services at the hotel to the Plaintiffs' sex traffickers.

121.    The Plaintiffs were forced to engage in sexual activities within and on the Defendants' premises.

122.    Defendants' agents and employees made promises to the Plaintiffs' sex traffickers to not interfere with the Plaintiffs who were victims of human sex trafficking and slavery.

123.    The human sex trafficking enterprise was run out of the Defendants' hotels as follows:

    a.  The Plaintiffs' sex traffickers put up internet advertisements for the purpose of prostituting the Plaintiff. Said advertisements would include a phone number, which would ring to their cell telephone. During the telephone call, sex for cash was negotiated and the caller "John" would be informed that the Plaintiffs were at the Defendants' hotels.

    b.  The caller "John" who negotiated for the Plaintiffs' sex services would then appear on the Defendants' hotel premises and either the Plaintiffs would meet the "John" in the lobby to escort the "John" to their rooms, or the "John" would speak to the staff at the Defendants' hotels to inquire about the Plaintiffs' room numbers or otherwise direct the "John" to the Plaintiffs' room.

    c.  While the Plaintiffs performed sex acts with the "John" in the room, the

Plaintiffs' sex traffickers would linger in the halls and on the premises of the Defendants' hotels.

d. The "John" paid the Plaintiffs in cash in exchange for the commercial sex acts received in the hotel room. The Plaintiffs gave the cash received for the commercial sex acts to their traffickers.

e. In turn, the Plaintiffs' sex traffickers, used said cash as payment for the hotel rooms where commercial sex acts continued to take place, thereby benefitting the occupancy rates and the Defendants financially.

f. The Plaintiffs' sex traffickers also engaged in the commercial sale of illegal drugs on the Defendants' premises with sales taking place either in their hotel rooms or in public areas of the hotels.

124. The Plaintiffs performed numerous commercial sex acts ("dates") per day while at the Defendants' hotels. As such, the foregoing routine occurred on the premises numerous times in a 24-hour window.

125. Upon information and belief, some of the "Johns" visiting the Plaintiffs while on the Defendants; premises, were agents and/or employees of the Defendants.

126. The Plaintiffs' sex traffickers, through the Plaintiffs and other agents, conducted multiple illegal drug sales throughout the day on the Defendants' premises.

127. The following was also routine conduct taking place on the Defendants' premises as a result of the human sex trafficking enterprise:

a. The Plaintiffs' sex traffickers frequently rented the rooms all close to each other;

b. The Plaintiffs' sex traffickers paid cash for the Defendants' hotel rooms where the Plaintiffs engaged in commercial sex acts;

c. The Plaintiffs' sex traffickers would book extended stays at the Defendants' hotels for themselves and for the Plaintiffs on a routine basis and on a rotating basis frequently throughout the year;

d. The Plaintiffs and the Plaintiffs' sex traffickers would have few or no personal possessions for these extended stays;

e. The Plaintiffs were confined in the Defendants' hotel rooms for long periods of time;

f. The Plaintiffs' rooms and their sex traffickers' rooms consistently displayed "Do Not Disturb" signs on the doors to the room where the Plaintiffs were engaged in commercial sex acts;

g. Men ("Johns") frequently entered and left the Defendants' hotel rooms where the Plaintiffs were engaged in illegal commercial sex acts at all times of day and night;

h. The Defendants' staff and customers reported to the Defendants' administration that the rooms where the Plaintiffs engaged in commercial sex acts were messy, and contained sex and drug paraphernalia and had an unclean smell;

i. The Defendants' hotel rooms where the Plaintiffs were beaten or forced to engage in commercial sex acts displayed blood;

j. The Plaintiffs' sex traffickers consistently refused housekeeping services and otherwise would refuse staff from entering their rooms and the Plaintiffs' rooms;

k. The Plaintiffs would frequently request clean towels;

l. The Plaintiffs dressed in a sexually explicit manner and would walk the hallways of the Defendants' hotels;

    m. Consistently, excessively and often there was loud noise from the Plaintiffs' room(s).

    n. During nighttime hours, the Plaintiffs and their "Johns" and drug clients would create noise in the public area of the Defendants' hotels and upon information and belief, would be a disturbance to public members using the hotels for their intended purposes;

    o. The Plaintiffs would sleep during the day and the Defendants' staff members would consistently see the Plaintiffs wearing lounge or sleep type clothing during the day.

    p. While at the Defendants' hotels, the Plaintiffs displayed clear signs of physical abuse, diminished personal hygiene, submissiveness and inappropriate attire.

128.　Upon information and belief, while at the Defendants' hotels, the Plaintiffs were forced to engage in frequent use of illegal drugs and would exhibit behavior consistent with someone who was under the influence, or near overdose, of a chemical substance.

## COUNT I
### Violation of 18 U.S.C. §1595 ("TVPRA")

129.　Plaintiffs S. Y. and C. S. adopt and incorporate by reference each and every factual allegation set forth in paragraphs 1–128 of this Complaint against their respective Defendants.

130.　Plaintiffs S. Y. and C. S. are victim of sex trafficking within the meaning of 18 U.S.C. §1591(a) and (b) and are therefore entitled to bring a civil action under 18 U.S.C. §1595.

131.　The Defendants' acts, omissions, and commissions, taken separately and/or together, outlined above, constitute a violation of 18 U.S.C. §1595. Specifically, the Defendants had a statutory obligation not to benefit financially from a venture that they knew, or should have known,

to engage in violations of 18 U.S.C. §1591 (a) or (b).  At all relevant times, the Defendants breached this duty by participating in, and facilitating, the harboring and providing of S. Y.for the purposes of commercial sex induced by force, fraud, or coercion by their acts, omissions, and commissions.

132.    The Defendants have financially benefited as a result of these acts, omissions, and/or commissions by keeping operating costs low, and maintaining the loyalty of the segment of their customer base that seeks to participate in the sex trade.  Moreover, the Defendants directly benefitted from the trafficking of S. Y.on each occasion they received payment for rooms that they were being kept in at the Defendants' hotels. The actions, omissions, and/or commissions alleged in this pleading were the but for and proximate cause of S. Y.'s and  C. S.'s injuries and damages.

133.    For the reasons set forth herein, Plaintiffs S. Y. and C. S. suffered and will continue to suffer substantial economic, physical and psychological injuries as the result of being trafficked and sexually exploited at the Defendants' hotels and properties in violation of 18 U.S.C. §1591.

134.    By reason of the foregoing, the Plaintiffs have been damaged as against the Defendants in the sum of TEN MILLION DOLLARS ($10,000,000.00).

### COUNT II
### Violation of Fla. Stat. § 772.104

135.    Plaintiffs S. Y. and C. S. adopt and incorporate by reference each and every factual allegation set forth in paragraphs 1–128 of this Complaint against their respective Defendants.

136.    Plaintiffs S. Y. and C. S. bring this claim against the Defendants under Fla. Stat. § 772.104.

137.    The Defendants are associated for the common purpose of profiting off an established sex trafficking scheme.  This association-in-fact is therefore an enterprise (the "RICO Enterprise") within the meaning of Fla. Stat. § 772.102(3).

138.    The Defendants conducted or participated in, or conspired to conduct or participate in, the

affairs of the RICO Enterprise through a pattern of numerous acts of racketeering activity defined under Fla. Stat. § 772.102(1)(a)(15) and in violation of Fla. Stat. § 772.103, related by their common purpose to profit off an institutionalized sex trafficking scheme.

139.    Specifically, the Defendants conducted or participated in, and/or conspired to conduct or participate in, the affairs of the RICO Enterprise by knowingly, or with reckless disregard, maintaining sex trafficking as defined by Fla. Stat. § 787.06(2)(f).

140.    As described in the preceding paragraphs, the Defendants maintained sex trafficking by knowingly, or with reckless disregard, repeatedly allowing sex trafficking to occur on their premises between 2015 and 2016.

141.    In exchange for maintaining the sex trafficking scheme, the Defendants received a financial benefit in violation of Fla. Stat. § 787.06(3).

142.    These predicate acts of racketeering activity described above constitute a "pattern of racketeering activity" as defined in Fla. Stat. § 772.102(4) and furthered the common purpose of the RICO Enterprise to profit from a sex trafficking scheme.

143.    The Defendants' acts have yielded consistent results and caused physical and psychological injuries to the Plaintiff.

144.    As set forth in the preceding paragraphs, the racketeering acts have similar participants. The Defendants are all hospitality companies that provide lodging through their portfolio of brands.

145.    As set forth in the preceding paragraphs, the Defendants directed their racketeering activities at common victims, S. Y. and C. S.

146.    As set forth in the preceding paragraphs, the Defendants' acts have similar methods of commission, such as maintaining their deficiencies in implementing and enforcing policies and

protocols regarding sex trafficking at their hotels in order to maximize their profits.

147.     As a direct and proximate result of the Defendants' acts discussed in this section, by and through their agents, servants, franchisees and/or employees, Plaintiffs S. Y. and C. S. have suffered property damage and bodily injuries that are of a continuing or permanent nature, resulting pain and suffering, disability, disfigurement, mental anguish, PTSD, humiliation, distress, deformation, loss of capacity to enjoy life, loss of enjoyment of life, and expenses of medical treatment. All of the losses are either permanent or continuing in their nature and the Plaintiffs will suffer from such losses in the future.

148.     By reason of the foregoing, the Plaintiffs have been damaged as against the Defendants in the sum of TEN MILLION DOLLARS ($10,000,000.00).

## COUNT III
### Premise Liability

149.     Plaintiffs S. Y. and C. S. adopt and incorporate by reference each and every factual allegation set forth in paragraphs 1–128 of this Complaint against their respective Defendants.

150.     At all times material to this complaint, the Plaintiffs, while business invitees or otherwise lawfully present upon said premises, did sustain injuries as a result of Defendants' patrons and the criminal activity carried on therein. Defendants, by and through their agents, servants, franchisees and/or employees owed a duty to maintain the subject premises in a reasonably safe condition and free from conditions that would render it dangerous and unsafe for the Plaintiffs.

151.     The Defendants, by and through their agents, servants, franchisees and/or employees owed a duty to exercise reasonable care to protect the Plaintiff, by inspection or other affirmative acts, from the danger of any reasonably foreseeable harm occurring from the reasonably foreseeable use of the premises by sex traffickers.

152.     The Defendants, by and through their agents, servants, franchisees and/or employees owed a duty to exercise reasonable care to keep their hotel guests safe by implementing and enforcing security measures and proper protocols.

153.     The Defendants, by and through their agents, servants, franchisees and/or employees owed a duty to safeguard the Plaintiffs against criminal conduct that the Defendants could reasonably foresee happening on their business premises.

154.     The Defendants, by and through their agents, servants, franchisees and/or employees owed a duty to maintain their entire hotel premises in a hospitable, safe and reasonable manner, as well as to those areas beyond the hotels' property lines for which Defendants had possession, custody or control of.

155.     The Defendants had actual or constructive knowledge of prior similar sex trafficking incidents carried out on their premises and other hotel properties they owned.

156.     The Defendants knew or should have known, in light of all the attendant circumstances stated herein, that the risk of such criminal conduct taking place would be unreasonably high without the Defendants' hotels taking appropriate security precautions against such conduct as well as protocols for reporting and refusing such conduct.

157.     The Defendants, by and through their agents, servants, franchisees and/or employees had actual knowledge of the dangerous condition the Plaintiffs were in, or in the alternative, that the dangerous condition existed for a sufficient length of time so that the Defendants, in the exercise of ordinary care, should have known of the conditions, thereby giving the Defendants constructive knowledge of the Plaintiffs' peril; and/or that the condition occurred with regularity and was therefore foreseeable; and/or Defendants should have known of the dangerous condition or peril by conducting proper and reasonable inspection of their premises or guests' conduct.

158.    Because human sex trafficking and associated conduct was foreseeable, the Defendants had a duty to take adequate measures to protect their guests, including the Plaintiff, from being victims of continued sex trafficking.

159.    At all times material, the Defendants, by and through their agents, servants, franchisees and/or employees created and/or allowed the dangerous condition to exist within their premises and/or failed to keep the Plaintiffs safe while on the premises.

160.    The Defendants could have taken any number of corrective measures to make the dangerous conditions cease, including not accepting payments, not allowing "Johns" to enter their hotel premises, etc. In failing to take any of these measures to report and remove the dangerous condition from their premises, the Defendants failed to take reasonable care to protect the Plaintiff, their hotel guest.

161.    Furthermore, by leaving the premises open and unattended, the Defendants encouraged the use of the premises by loiters, pimps, criminals, rapists and drug dealers to run their own criminal venture, prostitute, batter, falsely imprison, overdose, enslave, and gravely injure women, such as Plaintiff, who – because of their fear, mental state, financial restraints and physical injuries from the forced sex occurring in Defendants rooms – were unable to rescue themselves. Accordingly, the Defendants' failure to act effectively enabled their hotel room(s) to confine and/or imprison the Plaintiffs without any safe means of escape from the "Johns" and/or "pimps".

162.    The Defendants, by and through their agents, servants, franchisees and/or employees breached their duty owed to the Plaintiff, and were negligent by:

        a.  Creating a dangerous condition; and/or

        b.  Failing to correct the aforementioned dangerous condition; and/or

        c.  Failing to report and refuse renting to the traffickers; and/or

    d.  Failing to properly and adequately maintain the premises in a reasonably safe condition;

    e.  Failing to monitor and prevent their staff and agents from conducting and engaging in illegal sex and drug trafficking; and/or

    f.  Failing to have security measures to protect the Plaintiff; and/or

    g.  Failing to take affirmative steps to investigate suspicious conduct and forbid criminal conduct.

163.    As a direct and proximate result of the acts and omissions of the Defendants, by and through their agents, servants, franchisees and/or employees – which lead to the continuous dangerous condition on the hotel premises in approximately 2015 and through approximately January of 2016 – Plaintiffs S. Y. and C. S. have suffered property damage and bodily injuries that are of a continuing or permanent nature, resulting pain and suffering, disability, disfigurement, mental anguish, PTSD, humiliation, distress, deformation, loss of capacity to enjoy life, loss of enjoyment of life, and expenses of medical treatment. All of the losses are either permanent or continuing in their nature and the Plaintiffs will suffer from such losses in the future.

164.    By reason of the foregoing, the Plaintiffs have been damaged as against the Defendants in the sum of TEN MILLION DOLLARS ($10,000,000.00).

### COUNT IV
### Alternatively, Breach of Contract – Intended Third Party Beneficiary

165.    Plaintiffs S. Y. and C. S. adopt and incorporate by reference each and every factual allegation set forth in paragraphs 1–128 of this Complaint against their respective Defendants.

166.    Upon information and belief, the Defendants had a handbook, manual or protocol for their staff for the safety and care of their hotel guests, as well as a risk management plan.

167.    The Plaintiffs were hotel guests and therefore was the intended third-party beneficiary

who had a contractual right to receive such safety, security and care by the Defendants' personnel.

168.    The Defendants, by and through their agents, servants, franchisees and/or employees breached their duty owed to the Plaintiff, and were negligent by:

      a.  Failing to adhere to hospitality standards; and/or

      b.  Failing to adhere or enforce the protocols or security mechanisms; and/or

      c.  Failing to adequately train their staff /agents how to monitor for illegal sex and/ or drug activity on their premises and actions to take when observed; and/or

      d.  Failing to have a complete risk management plan in place or implement the appropriate protocols therein.

169.    As a result, the Plaintiffs did not receive the benefit of the security protection, employee training or protocols that the Defendants' hotels set up for the benefit of their hotel guests, to wit, Plaintiff S. Y. and Plaintiff C. S.

170.    The Plaintiffs have suffered economic injury as intended third-party beneficiary due to the Defendants' breach of each of their employee manuals, handbooks, risk management plans, or otherwise.

171.    As a direct and proximate result of the acts and omissions of the Defendants, by and through their agents, servants, franchisees and/or employees – which lead to the continuous dangerous condition on the hotel premises in approximately 2015 and through approximately January of 2016 – Plaintiffs S. Y. and C. S. have suffered property damage and bodily injuries that are of a continuing or permanent nature, resulting pain and suffering, disability, disfigurement, mental anguish, PTSD, humiliation, distress, deformation, loss of enjoyment of life, and expenses of medical treatment. All the losses are either permanent or continuing in their nature and the Plaintiffs will suffer from such losses in the future.

172.    By reason of the foregoing, the Plaintiffs have been damaged as against the Defendants in the sum of TEN MILLION DOLLARS ($10,000,000.00).

**COUNT V**
**Negligent Hiring, Entrustment and Supervision**

173.    Plaintiffs S. Y. and C. S. adopt and incorporate by reference each and every factual allegation set forth in paragraphs 1–128 of this Complaint against their respective Defendants.

174.    The Defendants' agents, employees, franchisees and/or servants negligently authorized criminals to rent rooms for prostitution and drug dealing, creating a foreseeable risk that the Plaintiffs would be sold, used, abused, drugged, beaten and forced to engage in conduct for fear of their lives.

175.    The Defendants' agents, employees, franchisees and/or servants failed to either identify and/or report the human sex trafficking and foreseeable harm of the Plaintiff.

176.    The Defendants' agents, employees, franchisees and/or servants failed to refuse continued lodging services to human sex traffickers.

177.    The Defendants were in control of the hiring and performing background checks of said agents, employees, franchisees and/or servants; of instructing, training and supervising said agents, employees, franchisees and/or servants; and the decisions to terminate said agents, employees, franchisees and/or servants.

178.    At all times, the Defendants were negligent in their hiring, employment and termination decisions, and the said negligent decisions caused the Plaintiffs to be injured.

179.    It was foreseeable that the Defendants' acts and omissions increased the risk that these illegal acts would regularly occur on their premises and would cause harm to the Plaintiff. But for the negligence and omissions of the Defendants, the criminal conduct, including human sex trafficking, on the foregoing dates could have been prevented and/or

stopped.

180.     Accordingly, the Defendants are liable for all harmful results that are the normal incidents of, and within the increased risk caused by their negligent acts and omissions.

181.     As a direct and proximate result of the acts and omissions of the Defendants, by and through their agents, servants, franchisees and/or employees-which lead to the continuous dangerous condition on the hotel premises in approximately 2015 and through approximately January of 2016 – Plaintiffs S. Y. and C. S. have suffered property damage and bodily injuries that are of a continuing or permanent nature, resulting pain and suffering, disability, disfigurement, mental anguish, PTSD, humiliation, distress, deformation, loss of capacity to enjoy life, loss of enjoyment of life, and expenses of medical treatment. All the losses are either permanent or continuing in their nature and the Plaintiffs will suffer from such losses in the future

182.     By reason of the foregoing, the Plaintiffs have been damaged as against the Defendants in the sum of TEN MILLION DOLLARS ($10,000,000.00).

## COUNT VI
## Negligent Rescue

183.     Plaintiffs S. Y. and C. S. adopt and incorporate by reference each and every factual allegation set forth in paragraphs 1–128 of this Complaint against their respective Defendants.

184.     At all times material to this litigation, the Defendants were in full possession and complete control of their hotels in that Defendants are the owners in fee simple and ran a profit business of renting out rooms on their premises.

185.     The Defendants knew or should have known that suspicious activity, illegal transactions, abuse, crimes, drugs and sex slavery were a regular occurrence on their premises and were being conducted by a regular group of individuals.

78

186.     The Defendants knew or should have known that this type of environment poses a danger on their premises.

187.     The Defendants had a duty to keep their hotel guests and their premises safe and prevent foreseeable criminal activity.

188.     The Defendants had a duty to take appropriate actions that would properly inform themselves and make the appropriate repairs to make their hotels safe, or otherwise frustrate criminal activity.

189.     By failing to act and prevent suspicious behavior, Defendants caused dangerous conditions to occur, exist and continue on their  premises at all relevant times in this complaint.

190.     Accordingly, the Defendants knew or should have known that an illegal sex trafficking venture and drug conduct was occurring on their premises but took no appropriate actions to properly investigate, report, cease or prevent the illegal conduct, nor to safeguard their hotel guests and rescue the Plaintiffs from the peril they caused by renting the rooms for extended stays to human sex traffickers.

191.     During all relevant times, the Defendants financially benefitted from the rental money, where the Plaintiffs were held as a sex slave, and the consistent occupancy. By failing to prevent or correct the dangerous conditions on their premises, Defendants' nonfeasance allowed the "Johns'" continuing demand for the Plaintiffs' services to always be met.

192.     As a result of the Defendants' authorization, facilitation, access, financial benefits and concealment of the sex trafficking and drug use on their premises, the Plaintiffs were placed in peril.

193.     The Defendants had a duty to make safe a dangerous condition on their premises and to

rescue their hotel guests from the peril they created, as well as to protect their hotel guests from foreseeable criminal activity. The agents of Defendants had a duty to act as reasonably prudent person under emergency circumstances to rescue the Plaintiffs when they observed the Plaintiffs nearly stumbling onto the adjacent highway, overdose, injured and/or being beaten.

194.    The Defendants failed to protect and failed to rescue the Plaintiffs given their legal duty to rescue the Plaintiffs as a result of the hotel-guest relationship and because the Defendants placed the Plaintiffs in the peril of continued and extended forced sex services.

195.    The Defendants failed to act as reasonably prudent hotel owners and operators, especially in light of the prior incidents and known issues in the industry and in the community.

196.    The Plaintiffs suffered physical, mental, emotional and economic damages as the result of the Defendants' actions and inactions.

197.    As a direct and proximate result of the acts and omissions of Defendants, by and through their agents, servants, franchisees and/or employees – which lead to the continuous dangerous condition on the hotel premises in approximately 2015 and through approximately January of 2016 – Plaintiffs S. Y. and C. S. have suffered property damage and bodily injuries that are of a continuing or permanent nature, resulting pain and suffering, disability, disfigurement, mental anguish, PTSD, humiliation, distress, deformation, loss of capacity to enjoy life, loss of enjoyment of life, and expenses of medical treatment. All the losses are either permanent or continuing in their nature and the Plaintiffs will suffer from such losses in the future.

198.    By reason of the foregoing, the Plaintiffs have been damaged as against the Defendants in the sum of TEN MILLION DOLLARS ($10,000,000.00).

## COUNT VII
## Unjust Enrichment

199.     Plaintiffs S. Y. and C. S. adopt and incorporate by reference each and every factual allegation set forth in paragraphs 1–128 of this Complaint against their respective Defendants.

200.     By failing to prevent or correct the dangerous conditions on their premises, the Defendants' nonfeasance enabled the criminal enterprise to continue on their premises, which allowed the "Johns'" continuing demand for the Plaintiffs' services to always be met. During all relevant times, Defendants financially benefitted from the consistent occupancy and rental money of the rooms, which is where the Plaintiffs were held as sex slaves.

201.     While the Defendants were profiting from these conditions, the Plaintiffs were suffering; these continuous and repeated dangerous conditions as a sex slave resulted in bodily injuries and mental harm. The Plaintiffs continue to suffer PTSD to this day as a result of those circumstances and harm.

202.     Accordingly, the Defendants received benefits at the expense of the Plaintiff; the Defendants benefitted financially and/or received something of value from allowing rooms to be rented where the Plaintiffs were exploited, confined, abused and forced to perform sexual acts. Among other things, the Defendants took the money from the forced sexual services for room rental fees.

203.     The Defendants received unjust enrichment from the sale of products while the above patrons were on the premises, including the "Johns".

204.     By the Defendants' inactions the Defendants received unjust enrichment in "inviting back" the Plaintiffs and their sex traffickers on a rotational basis throughout the above time period.

205.     Equity mandates such payments be returned to the Plaintiff.

206.     As a direct and proximate result of the acts and omissions of the Defendants, by and

through their agents, servants, franchisees and/or employees – which lead to the continuous

dangerous condition on the hotel premises in approximately 2015 and through approximately

January of 2016 – Plaintiffs S. Y. and C. S. have suffered property damage and bodily injuries that

are of a continuing or permanent nature, resulting pain and suffering, disability, disfigurement,

mental anguish, PTSD, humiliation, distress, deformation, loss of enjoyment of life, and

expenses of medical treatment. All the losses are either permanent or continuing in their nature

and the Plaintiffs will suffer from such losses in the future.

207.    By reason of the foregoing, the Plaintiffs have been damaged as against the Defendants

in the sum of TEN MILLION DOLLARS ($10,000,000.00).

## COUNT VIII
### Aiding and Abetting, Harboring, Confining, Coercion and Criminal Enterprise

208.    Plaintiffs S. Y. and C. S. adopt and incorporate by reference each and every factual

allegation set forth in paragraphs 1–128 of this Complaint against their respective Defendants.

209.    The Defendants affirmative acts of renting their hotel rooms for extended amount of

time to the Plaintiffs' sex traffickers for sex trafficking, and failure to report illegal conduct

to the authorities caused the Plaintiffs to be routinely confined to the hotel rooms and their

premises.

210.    The Defendants desired the Plaintiffs' continuous occupancy of the hotel rooms as it

generated revenue, even if said occupancy was related to suspicious or criminal activity.

211.    The Defendants knew that the Plaintiffs had no reasonable means of escape due to

the physical barricades of the Plaintiffs' sex traffickers in the hallways, forced drug use, or

physical restraints.

212.    The Defendants knew that the Plaintiffs did not leave their hotel rooms for extended

period of times, nor allowed maintenance to come into their hotel rooms.

213.    The Plaintiffs' imprisonment or forced confinement arose out of the Defendants' continuous negligent operations in approximately 2015 through approximately January of 2016. The Defendants' negligent operations aided "Johns" to find and enter the Plaintiffs' room thereby allowing others to wrongfully enter or invade the Plaintiffs' right of private occupancy.

214.    The Defendants' negligent operations allowed "Johns" to make the Plaintiffs their sex slaves.

215.    The Defendants facilitated or assisted the criminal enterprise by either willful blindness, gross negligence, and/or indifference.

216.    Accordingly, the Defendants are liable for all foreseeable damages that arose from the Plaintiffs' confinement, forced labor, drug use, and slavery that continually took place at the Defendants' hotels.

217.    As a direct and proximate result of the acts and omissions of the Defendants, by and through their agents, servants, franchisees and/or employees – which lead to the continuous dangerous condition on the hotel premises in approximately 2015 and through approximately January of 2016 – Plaintiffs S. Y. and C. S. have suffered property damage and bodily injuries that are of a continuing or permanent nature, resulting pain and suffering, disability, disfigurement, mental anguish, PTSD, humiliation, distress, deformation, loss of enjoyment of life, and expenses of medical treatment. All the losses are either permanent or continuing in their nature and the Plaintiffs will suffer from such losses in the future.

218.    By reason of the foregoing, the Plaintiffs have been damaged as against the Defendants in the sum of TEN MILLION DOLLARS ($10,000,000.00).

**COUNT IX**
**Negligent Infliction of Emotional Distress**

219.     Plaintiffs S. Y. and C. S. adopt and incorporate by reference each and every factual allegation set forth in paragraphs 1–128 of this Complaint against their respective Defendants.

220.     The Defendants had reasonable knowledge and/or notice of the events of trafficking occurring on their premises and failed to take action to prevent the trafficking and/or protect their patrons, the Plaintiff.

221.     The Defendants owed the Plaintiffs a duty of care and to not cause emotional distress.

222.     The Defendants breached said duty by failing to act, which subjected the Plaintiffs to suffer continuous and repetitive dangerous conditions as set forth herein that is extreme and outrageous. Indeed, human trafficking and sex slavery transcend all bounds of human decency. As a result, the Plaintiffs were subject to severe emotional and physical trauma by the inaction of the Defendants.

223.     As a direct and proximate result of the acts and omissions of Defendants, by and through their agents, servants, franchisees and/or employees – which lead to the continuous dangerous condition on the hotel premises in approximately 2015 and through approximately January of 2016 – Plaintiffs S. Y. and C. S. have suffered property damage and bodily injuries that are of a continuing or permanent nature, resulting pain and suffering, disability, disfigurement, mental anguish, PTSD, humiliation, distress, deformation, loss of capacity to enjoy life, loss of enjoyment of life, and expenses of medical treatment. All the losses are either permanent or continuing in their nature and the Plaintiffs will suffer from such losses in the future.

224.     Due to all of the above allegations against the Defendants, the Plaintiffs plead allowance to recover damages, court costs and reasonable attorney's fees.

225.     By reason of the foregoing, the Plaintiffs have been damaged as against the Defendants

in the sum of TEN MILLION DOLLARS ($10,000,000.00).

## COUNT X
## Assault and Battery and Kidnapping Offenses

226.     Plaintiffs S. Y. and C. S. adopt and incorporate by reference each and every factual allegation set forth in paragraphs 1–128 of this Complaint against their respective Defendants.

227.     The Plaintiffs' sex traffickers intended to place Plaintiffs in fear; to control Plaintiffs; and to touch, use, abuse and sell the Plaintiffs like a piece of property. The Plaintiffs' sex traffickers did in fact control, touch, use, abuse and sell the Plaintiffs like a piece of property, and the Plaintiffs were in fact fearful for their lives. All other Defendants had reasonable knowledge and/or participation of said assault and battery against the Plaintiffs.

228.     The Plaintiffs' sex traffickers intended to confine, restrain, control and imprison the Plaintiffs as sex slaves against their will. The Plaintiffs' sex traffickers did in fact confine, restrain, control and imprison the Plaintiffs against their will. All other Defendants had reasonable knowledge and/or participation of said assault and battery against the Plaintiffs because of the outward appearance of Plaintiffs' bruises and lacerations.

229.     As a direct and proximate result of the acts and omissions of the Defendants, by and through their agents, servants, franchisees and/or employees – which lead to the continuous dangerous condition on the hotel premises in approximately 2015 and through approximately January of 2016 – Plaintiffs S. Y. and C. S. have suffered property damage and bodily injuries that are of a continuing or permanent nature, resulting pain and suffering, disability, disfigurement, mental anguish, PTSD, humiliation, distress, deformation, loss of capacity to enjoy life, loss of enjoyment of life, and expenses of medical treatment. All the losses are either permanent or continuing in their nature and the Plaintiffs will suffer from such losses in the future.

230.    By reason of the foregoing, the Plaintiffs have been damaged as against the Defendants in the sum of TEN MILLION DOLLARS ($10,000,000.00).

### Prayer for Relief

**WHEREFORE**, the Plaintiffs demand judgment against all the Defendants on each of the above-referenced claims and Counts and as follows:

1.  Awarding compensatory damages to the Plaintiffs for past and future damages for the described losses with respect to each count, including but not limited to pain and suffering for severe and permanent personal injuries sustained by the Plaintiffs, health care costs, medical monitoring, together with interest and costs as provided by law;

2.  For any other causes of action and/or claims as may be compensable under local laws and/or statutes as may apply under the laws in the jurisdiction and venue in which this case will be transferred for trial;

3.  Punitive and/or exemplary damages for the wanton, willful, fraudulent, reckless acts of the Defendants who demonstrated a complete disregard and reckless indifference for the safety and welfare of the general public and to the Plaintiffs in an amount sufficient to punish the Defendants and deter future similar conduct;

4.  Awarding the Plaintiffs reasonable attorney's fees;

5.  Awarding the Plaintiffs the costs of these proceedings; and

6.  Such other and further relief as this Court deems just and proper.

### Demand for Jury Trial

Plaintiff S. Y. and Plaintiff C. S. demand a trial by Jury on all triable issues.

Law Office of Sharon M. Hanlon, PA
Attorney for Plaintiff
5633 Naples Boulevard
Naples, Florida 34109

Telephone: (239) 598-3222
shanlon@zelmanandhanlon.com
gcohen@zelmanandhanlon.com

*s/ Sharon M Hanlon*
Sharon M Hanlon, Esq
FL Bar Number: 946620

And

Yale T Freeman, PA
Attorney for Plaintiff
999 Vanderbilt Beach Road, Suite 200
Naples, FL  34108
Telephone: (239) 530-2500
freeman@ytfreemanlaw.com

*s/ Yale T Freeman*
Yale T. Freeman, Esq
FL Bar Number: 161855

OF COUNSEL (*pro hac vice* motion forthcoming)

Michael A. London
Diana Yastrovskaya
DOUGLAS & LONDON, P.C.
59 Maiden Lane, 6th Floor
New York, New York 10038
Ph: (212) 566-7500
Fax: (212) 566-7501
mlondon@douglasandlondon.com
dyastrovskaya@douglasandlondon.com